6534

## KENTUCKY WAGON MFG. CO. v. PEOPLE'S SUPPLY CO.

EXPLAINING WRITTEN CONTRACTS BY PAROL EVIDENCE.—Parol evidence is not admissible to explain that the terms "fully insured" in a written contract means in insurance parlance insured to three-fourths of its value, as that would be *contradicting* and not *explaining* terms of ordinary meaning in the contract.

Before KLUGH, J., Union, September Term, 1905.  Reversed.

Action by Kentucky Wagon Mfg. Co. against People's Supply Co.  From judgment for defendant, plaintiff appeals.

*Messrs. Helm & Helm and Scaife & Hamblin* for appellant.  The former cite: *Construction of contract is for the Court:* 2 Page on Con., sec. 1129; 9 Ency., 591; 17 S. C., 427; 19 S. C., 121.  *When testimony will be admitted to explain terms used by parties:* Page on Con., sec. 1111.  *Particular construction given to contract by parties is of great weight:* 9 Ency., 588.

*Messrs. Scaife & Hamblin* cite: *It was duty of agent to inform its principal that wagons were not fully insured:* 2 Wash., 132; 12 Ency., 1068-1069.  *Contract should be construed as if made in Kentucky, and not according to usage known only in Union:* 27 Ency., 1 Ed., 714, 715, 719, 748, 752-754, 849, 882.  *Has a custom been proved?* 13 L. R. A., 440.  *What is insurance?* 32 L. R. A., 386; 44 L. R. A., 125.  *Judge should construe the contract:* 61 S. C., 463; 63 S. C., 422; 66 S. C., 22.

*Mr. J. Ashby Sawyer,* contra, cites: *The words "fully insured" should be interpreted according to their meaning in Union and there they mean three-fourths of value:* 31 S. C., 59; 36 S. C., 215; 22 Cyc., 84, 85.  *Erroneous instruction*

*and admission of irrelevant evidence not prejudicial is harmless error:* 36 S. C., 216; 52 S. C., 232; 75 S. C., 197; 51 S. C., 480; 74 S. C., 22; 73 S. C., 557.

May 2, 1907. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages alleged to have been sustained by the plaintiff in consequence of the defendant's failure to keep certain property fully insured against loss or damage.

The facts as stated by his Honor, the Circuit Judge, and so much of his charge as gives rise to the questions presented by the exceptions, are as follows:

"Plaintiff alleges that in pursuance of a contract between it and the defendant, People's Supply Co., the plaintiff had placed on consignment with the defendant as its agent certain wagons to be sold and that the defendant had agreed, by entering into a contract with the plaintiff, to keep the wagons fully insured from loss or damage by fire, and had agreed further that if loss or damage ensued because of the failure of the defendant to keep that part of its agreement, then the defendant would make good whatever loss so ensued, and allege further that loss did ensue; that the defendant failed to perform the agreement to keep the property fully insured and loss ensued, and that the defendant is therefore liable to plaintiff in the amount of the loss, which the plaintiff alleges was $272.26, and brings this suit to recover that amount from the defendant.

"The defendant denies that it failed to fully insure in accordance with the terms of its contract and alleges that it insured the property for its full value, that the term 'full value,' as applied to insurance of personal property, means full insurable value, and alleges the full insurable value of personal property is three-fourths of the actual value, and, therefore, it did keep the property fully insured, and denies it is liable to plaintiff because of any loss occurring from damage by fire to plaintiff.

"Well, now, those are the issues presented by the pleadings. It is not denied there was such a contract as that between the parties, that is, that wagons were to be consigned to defendant as agent of plaintiff to sell, and the defendant did agree to keep the property fully insured and also agreed to make good any loss that ensued by reason of the defendant's failure to keep the property fully insured.

"So now it resolves itself into a question for you to determine as to whether the defendant did perform the contract which the plaintiff alleges, the defendant broke—if you find from the evidence the defendant did fail to perform its contract, and that imposes the burden upon the plaintiff of proving that by the preponderance of the testimony; then the defendant is liable to plaintiff for the amount of loss which ensued. On the other hand, if you find the defendant did not fail to perform its contract, or in other words that the defendant kept its contract and fully performed it by having the property fully insured, then no matter if loss did ensue from fire, the defendant would not be liable to plaintiff. So that in accordance with your determination of that fact would be your verdict.

"'Well, now, the term 'fully insured' in its plain ordinary significance would mean insured to the full value of the original. That was the idea of insurance contracts. If a person insured another person to a certain amount against loss by fire and loss ensued, the insurer would be liable to make good the loss no matter what the amount was unless there be some evidence of fraud in the transaction that would upset the whole contract. But where parties enter into a contract it is competent for them to make modifications of the contract. And so it became customary for insurance contracts to be modified and for the clause to either be inserted in the contract or attached to it to the effect that in case of loss the insurer should be liable only to a certain proportion of the actual value of the property. Well, now, the defendant here claims that that modification became so customary that it is always to be taken in connection with

the term 'fully insured for full value,' and that it was so taken in this particular contract between plaintiff and defendant.

"Well, it is a question for you to determine from the evidence whether that contention of defendant is established or not, and it is a question for you as to what insurance companies mean when they use the expression 'fully insured' or 'insured for full value.' It is competent for you to determine from the evidence in the case whether the term 'fully insured' or 'insured for full value,' as used in the insurance contract and as understood when people refer to your contract with reference to insurance, whether it means that insurance for the full value of the property would be paid upon loss by fire by establishing it was insured against, or whether it means that some less amount than the full value of the property would be paid. That is a question for you to determine from the evidence."

The provision of the policy as to the insurance is as follows:

"The said second party agrees to receive said wagons when delivered on cars or boat at Louisville, Ky., pay freight on same to point of destination, and keep them securely stored and sheltered from the weather until sold, until which time they are to remain the property of the party of the first part, and said second party will use all reasonable diligence and effort to effect sales. and will keep said wagons fully insured from loss or damage by fire without expense to and for the benefit of said first party until sold, and failing so to insure, said second party agrees to make good to said first party any loss that may occur by reason of said failure."

The main issue in the case is whether the Circuit Judge erred in submitting to the jury the question, whether there was a compliance by the defendant, with the terms of said contract, when it took out a policy of insurance with a provision that the insurance company would only be liable, in

case of loss by fire, to the extent of three-fourths the value of the property insured.

In 2 Page on Contracts, section 1111, the rule is thus stated:

"If the parties have used words which have an ordinary meaning, free from ambiguity and no technical meaning is shown, extrinsic evidence is inadmissible to show that the parties used such terms in a sense different from their ordinary meaning, as the only effect of such evidence would be to contradict the legal effect of the language which the parties themselves used. Thus evidence is not admissible to show the meaning of 'to be advertised until sold,' 'delivered East St. Louis,' 'wholesale prices,' or to mine ore at a certain price as long 'as we can make it pay.' * * * So, under a contract which refers to the 'amount' of grading it cannot be shown that 'amount' means cost and not quantity. If on the other hand, the term used is one which has two or more meanings, evidence of the intention of the parties direct, is admissible to show in which sense it was used. * * * So if the term 'perch' is shown to have two meanings when used as a measure of stone, the direct intention of the parties may be considered in ascertaining which meaning of the term was intended."

In *Adams* v. *Turner*, 73 Conn., 38, 45, the Court uses this language:

"It thus appears that the words 'new and useful improvements' in this contract, when read in connection with the rest of it, and without the aid of extrinsic evidence, mean actually existing improvements, and that their meaning in this respect is neither ambiguous nor uncertain. Under such circumstances the evidence extrinsic to the writing, offered to show that the parties attached a different meaning to the words in question than the one expressed in the writing, was properly excluded, for it was both unnecessary and immaterial; it was unnecessary because the writing itself is the primary evidence of what the parties meant, and if that of itself clearly shows what they meant there is no need of re-

sorting to the inferior evidence; it was immaterial, because the meaning expressed in the writing as ascertained from the writing itself is controlling and must prevail over any meaning that could be established by extrinsic evidence. It is only in cases where the words of the writing are, when read in connection with the entire writing, ambiguous or of doubtful import, that resort can be had in aid of their interpretation to the kind of extrinsic evidence which was offered and excluded in this case." Citing *Hall* v. *Rand*, 8 Conn., 560; *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 id. 19, 37; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 id., 374, 381; *Bailey* v. *Close*, 37 id. 408, 411; *Hotchkiss* v. *Higgins*, 52 *Id.*, 205, 213; *West Haven Water Co.* v. *Redfield*, 58 id. 39, 40.

The doctrine is stated as follows in the case of *Burton* v. *Forest Oil Co.*, 204 Penn. St. Rep., 349, 355:

"The learned trial Judge was right in excluding the testimony offered for the purpose of showing the trade meaning of the word 'gas' used in the lease between the plaintiff, Guffey and Queen. The purpose was to show that in the oil and gas business the word 'gas' as used in such contracts means gas derived from a gas well and not from an oil well. The lease granted the right to drill and operate for 'petroleum oil or gas' and provided that if gas is obtained in sufficient quantities to utilize, the consideration therefor should be $500 per annum for each well drilled on the premises. The meaning of the words is neither ambiguous nor uncertain, but is well understood. Nor does the connection in which it is used give it a meaning requiring parol evidence to explain it. The offer was in effect not to explain, but to contradict, the explicit provisions of the contract, by showing that the lessees were to pay for the gas only on condition that it was produced or derived from a gas well. This would have been in direct opposition to the agreement and in conflict with its terms. The lease, as we have seen, granted the right to drill for oil and gas but the consideration to be paid for the gas did not depend on whether it was

7—77

derived from an oil well or a gas well, but whether the gas was 'obtained in sufficient quantities to utilize.' Parol evidence is not permissible for the purpose of making a new and different agreement for the parties and hence the evidence, the rejection of which is complained of by the appellant, was properly excluded."

In the case of *Wikle* v. *Johnson,* Laboratories 31, So. Rep. (Ala.), 715, 717, the Court said:

"The Court properly excluded the proposed evidence of the defendant as to what was the agreement or understanding between him and plaintiff with reference to the meaning of the words, 'To be advertised until sold,' contained in the written contract of sale—the order executed by defendant. The writing itself, construed with reference to the nature of the transaction and in the light of surrounding circumstances, is the sole evidence of the agreement, and parties cannot be allowed to alter or vary its terms by evidence of a contemporaneous parol agreement or understanding as to the meaning of its language. *Kyle* v. *Bellinger,* 79 Ala., 516. The defendant having purchased the goods outright, it was obviously immaterial whether he had sold them or not."

Conceding it was the usual practice of insurance companies in general to write policies containing the 3-4 clause, such practice could not be shown for the purpose of contradicting words in agreements entered into between third parties, which are free from ambiguity or equivocation; and in their ordinary and usual acceptation have but one meaning, as in the case under consideration. This would infringe upon the well settled doctrine that parol testimony is inadmissible for the purpose of contradicting the terms of a written instrument.

The charge would have been free from error if the testimony had been *explanatory* instead of *contradictory* of the terms used in the agreement.

It will not be necessary to consider the other exceptions, as the questions presented by them are dependent upon the one just considered.

It is the judgment of this Court that the judgment of the Circuit Court be reversed and the case remanded for a new trial.