## Dorris v. Commonwealth.

(Decided February 12, 1929.)

WILKINS, SPARKS & JONES for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant was convicted on an indictment charging him with robbery, and his punishment was fixed at two years in the penitentiary.

The case is an unusual one. The prosecuting witness was John Thomas Case, a young man about 23 years of age. Appellant at the time of the alleged commission of the offense was about 20 years of age. They lived in the little town of Moorman and had been friends and companions all their lives. At no time had there been any ill feeling existing between them. Case testified that on the 12th day of December, 1927, he carried some chickens in an automobile to Central City, where he sold them to a dealer in poultry, who gave him a check in payment for $7.75. He took this check to the Mitchell pool room in Central City, where it was cashed. He started home in his automobile, and when he reached the railroad crossing at South Carrollton, a distance of about 4 miles from Central City, appellant was sitting by the side of the

road. He slowed down his automobile in going up the grade to the railroad tracks; when appellant with a double-barreled shotgun climbed into the back seat of his automobile. He drove on for about a mile and a half, when he came to Barnes' Hill on the road between South Carrollton and Moorman. He had some difficulty in making the grade, as the road was muddy. He observed that appellant had got out of the automobile and leveled the shotgun on him with the command that he turn over the $7 which he had in his pocket. He complied with the request. The appellant then asked him if that was all of the money that he received for the chickens, and he said that it was. Appellant was not satisfied and commanded him to turn his automobile around and drive back to Central City, a distance of more than 5 miles, so that he might investigate whether the witness received more than $7 when the check was cashed at the pool room. Appellant stood on the running board with his gun held on the witness all the way along the public road, through the main street of South Carrollton, and over the much-traveled highway between South Carrollton and Central City. He did not change his position when they reached Central City, but kept his gun on him as they drove through that city to a parking place. The witness was then directed to get out of the automobile, and with the gun still held on him he walked in front of appellant until they came to the Mitchell pool room, where appellant demanded to see the check which the witness had cashed earlier in the afternoon. The check was shown to him, and when he saw the amount he was satisfied. The witness stated that the appellant placed the shotgun which he carried in an alley under the steps of the pool room and went away. The witness obtained the shotgun thereafter and carried it into the pool room, where he told those present that he had been robbed and that he had the gun of the man who robbed him. He took the gun to his automobile and placed it therein. He did not leave Central City that night, but he and a friend remained in the automobile all night. The next day he procured a warrant for appellant. This is the substance of the evidence on which the commonwealth relied for a conviction. Mitchell, the proprietor of the pool room, was introduced as a witness for the commonwealth, and he testified that appellant and Case came to the pool room and examined the check, but he was positive that appellant did not speak while he was in the pool room and that Case did all of

the talking. Case testified that appellant did all of the talking in the pool room.

At the conclusion of the evidence for the commonwealth, the appellant testified that he borrowed the shotgun in the afternoon for the purpose of hunting rabbits; that he started out on his hunting trip, when he came up with a drummer in an automobile who was going to South Carrollton. It was his intention to walk from South Carrollton through the fields back to his home, but upon his arrival there he found that it was too late to hunt rabbits, consequently he sat down by the side of the road to await the coming of some one who would give him a lift on his way home. Case came along in a short while and, addressing him by a nickname, asked him if he desired to ride. Upon that invitation he got into the automobile, and they proceeded along towards Moorman without any sign of friction or disagreement between them. When they reached Barnes' Hill, Case suggested that they turn around and go back to Central City, to which appellant agreed. When they arrived at Central City, they went to the pool room, as Case had expressed the desire to see the check which he had cashed there that afternoon. He looked at the check and appeared satisfied. Appellant suggested that they go to a picture show, but Case said he did not believe that he desired to go. Appellant then asked him what he could do with his gun, and Case suggested that he put it under the steps. Appellant went to the picture show after agreeing with Case that he would return to the pool room after the show was over and they would return home. He returned, but could not find Case, and neither could he find his gun or the automobile. He walked home. This is substantially all of the evidence, but other matters crept in which raise a serious doubt in the minds of the court as to whether it was possible for appellant to have a fair trial under the circumstances.

After Case had finished his testimony in chief and the cross-examination had been completed, the commonwealth's attorney asked him this question: "Q. This case was set for last week. You failed to appear. Why was it you failed to appear? A. Well, from the threats that have been made I didn't know whether to come up here or not." The question and answer were objected to, and the objection was overruled with an exception. Following the question and answer quoted, he was asked who made the threats, and replied that they were made by the mother and sister of appellant. He was then asked

whether they did anything else to keep him away, and his answer was that they gave him $20. He went into considerable detail as to his keeping away from court on the day that the case had been set for trial. There was no objection to any of this evidence except as indicated above. On further cross-examination the attorney for appellant asked him many questions about the threats and the receiving of money. The mother and sister of appellant testified and denied most positively that they had given him money or that they had made any threats against him. They testified that from time to time he had tried to get money from them and had agreed to leave if they would give him $25, which they refused to do. The mother put into the record a letter which she had received from him, in which he stated that he thought the matter ought to be settled without hardness or madness. There was a disinterested witness present when he called on the mother and sister of the appellant and demanded money, and she testified that they refused to give it to him. There is not a line of evidence that appellant knew anything about any threats, if they were made, or that he knew anything about the giving of money, if any was given.

The sole question that we have before us is whether the one objection indicated above is sufficient to help him any, as none of the other evidence relating to threats, the giving of money, the attempt to extort money, or the attempt to get the witness out of the way, was objected to. Ordinarily we could say, in a case such as this, that the evidence which was objected to was not prejudicial; but this is a close case on the evidence, and the mind is left in grave doubt as to whether the evidence is sufficient under all the circumstances to support the verdict of the jury. When the witness stated, in answer to the question as to why he remained away from the trial, that he did so because of threats that had been made against him, and that the threats were such as to create a doubt in his mind as to whether he should come to the trial, his statement was not only prejudicial in view of all the facts, but was calculated to create a thought in the minds of the jurors that some one had been making threats against him in connection with this case which were sufficient to keep him away from the trial. We are constrained to hold that the evidence which was objected to was prejudicial to the extent that it requires a reversal of the case.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.