13811

CHAPMAN v. METROPOLITAN LIFE INS. CO.

(173 S. E., 801)

Before S**EASE**, J., York, July, 1931. ▮

*Messrs. McDow & Hildebrand* and *Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Dunlap & Dunlap* and *Hart & Moss,* for respondent,

*Messrs. Spencer & White,* for Life Ins. Co. of Virginia and the Pilot Life Ins. Co. as *amici curiae.*

March 20, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent brought separate actions in the Court of Common Pleas for York County on three policies of insurance, in the appellant insurance company, to recover indemnity for alleged total disability. By consent of counsel, the cases were heard together, on circuit and on appeal, and it is agreed that the decision in the one case shall dispose of all of them.

The complaint alleged the issuance of the policy; that, while it was in full force and effect, and while plaintiff had complied with its terms and conditions, she "became, and is now, totally, and permanently disabled by reason of the fact of her contracting heart trouble, asthma and the ill effects received from a recent surgical operation." She alleges that notice of her claim was given to defendant, who failed to furnish the necessary blanks and has refused to pay the claim. The prayer of this cause of action is for half the amount of the face of the policy. In a second cause of action predicated upon the same allegations she demands that the defendant be required to issue to her a paid-up policy as by the terms of the policy sued on.

The answer sets up a general denial of the allegations of both causes of action; that the company issued to the plain-

tiff the policy sued on, subject to the conditions therein appearing, each of which "was expressly made a part of said contract, and contracted by the insured and every person entitled to claim thereunder to be a part of said contract"; that among the provisions of the policy was the following: "*Disability.* If, while this policy is in full force and effect and while there is no default in the payment of premium beyond the four weeks grace period, the insured shall lose by severance both hands, or both feet, or one hand and one foot, or lose permanently the sight of both eyes, total and permanent disability will be deemed to exist, and one-half of the amount of insurance then payable in the event of death shall be paid immediately upon receipt by the Company of due proof of such loss and surrender of the policy. Thereafter no further premiums will be required and the Company will issue a fee or paid up Policy providing for payment at the death of the Insured of such benefit as would have been payable under the original Policy."

The answer further alleges that plaintiff has not furnished the due proof of loss as is specified in the policy with reference to "Disability." It is further denied that plaintiff has suffered any such loss, and denies any liability.

The case was heard by Judge T. S. Sease and a jury, and a verdict rendered for plaintiff.

The defendant moved for nonsuit, directed verdict, and for new trial upon grounds set out in the record, all of which motions were denied.

The defendant offered no testimony, and now appeals from the judgment entered on the verdict, upon seven exceptions, which appellant's counsel elects to consider under the following statement of issues:

(1) It was error to hold that the disability provision contained in the policies was ambiguous and not susceptible to a clear and ready interpretation. Exceptions 1-8.

(2) It was error to allow the witness S. P. Chapman, for the plaintiff, to testify that the agents of the defendant

orally represented to the plaintiff when the policies were issued that the disability clause contained in the policies included and covered disability arising from any cause. Exception 1.

(3) It was error to allow the witness J. H. Green, on behalf of plaintiff, to testify that in other transactions the defendant's soliciting agents interpreted the disability clause in policies similar to these policies in suit as covering disability arising from any cause. Exception 7.

We will consider the exceptions as thus presented by these issues.

It appears that the presiding Judge held that the ██ provision of the policy relating to disability was ambiguous because it contained the words "total and permanent disability will be deemed to exist." These words follow in the disability clause the statement, "If while this policy is in full force and effect * * * the insured shall lose by severance both hands, or both feet, or one hand and one foot, or lose permanently the sight of both eyes." It seems patent that the grammatical, necessary, and only reasonable interpretation of the disputed language is that, if any of the disasters thereinabove set out should befall the insured, *then* "total and permanent disability will be deemed to exist." Any other interpretation is to wander into the realm of speculation and to impart ambiguity where none exists.

What is ambiguous in this whole clause taken together? The contract says, *if in certain named circumstances* you lose both hands, or both feet, or one hand and one foot, or the sight of your eyes, I agree that that is total and permanent disability and there will be no dispute over what constitutes total and permanent disability.

Black's Law Dictionary defines ambiguity thus: "Doubtfulness: Doubleness of meaning."

The exact meaning of the language used, if it needed aid in interpreting, is made clear by the further language of the

same unbroken sentence of the disability clause: "And one-half of the amount of insurance *then* payable in the event of death shall be paid immediately upon receipt by the Company of due proof of *such loss* and surrender of the policy." (Italics added.)

The only losses that have been mentioned are those therein enumerated, all of which relate to the loss of hands, and of feet and of eyesight. The reason for the insertion in this provision of the words, "Total and permanent disability shall be deemed to exist," would seem to be to provide against the possible contention that, even though one suffered any of the things enumerated, one still might be able to do something by way of earning a living. The writer of this opinion knows a man who has lost both hands, who is an accomplished penman, and who was for years the auditor of his county. It is common knowledge that much litigation has occurred over the determination of the question what constitutes total and permanent disability. It is a plain and fair interpretation that in this policy the insurer assured the insured that, if she incurred such loss, she would not be called on to prove "total and permanent disability."

The presiding Judge held that the phrase "total and permanent disability will be deemed to exist" created an ambiguity as to the character of the disability covered by the policy. With the purpose, as he stated, of clearing away that ambiguity, he admitted, over objection, the testimony of S. P. Chapman and J. H. Green. S. P. Chapman is the husband of the plaintiff, who is the insured in these three policies, and he is the named beneficiary therein. He testified that he has some ten or twelve policies of a like nature in this and other companies. He is a man of education, is a "smart man." He testified in this case that he negotiated all of these insurance transactions; that, when the policies now sued on were solicited by the agent, he read the policies and knew their contents. Yet he asked the agent each time what the policy covered, and was told it covered total disability

from any cause. J. H. Green was allowed, over objection, to testify that he was formerly an agent of this insurance company; that he and other agents of the company interpreted this provision of the policies relating to disability to cover disability from any cause.

From these conditions there arise these questions:

Was it not the duty of the Court to interpret this written instrument?

If there was ambiguity, did the testimony of Chapman and Green clear it up, or did it impart into the contract a condition not in it before, and thus alter and vary and contradict the terms of the written contract?

Was the testimony of Chapman and Green admissible?

There is no allegation nor plea of fraud.

The terms of the contract expressly forbid any alteration of the terms and conditions of the contract by any agent. The effect of the testimony thus objected to is to attempt to prove fraud or misrepresentation without having pleaded it.

It seems to be wholly unnecessary to cite authorities in support of the proposition that it is the duty of the Court to construe a written contract if there be no ambiguous language which is susceptible of more than one meaning.

We are satisfied that there is no trouble in construing the disability clause in this policy of insurance. The plainest possible language was used, to express without circumlocution or unnecessary verbiage the contract between the parties to the effect that, if the insured suffered any of the losses, therein plainly enumerated, she would be deemed to be totally and permanently disabled. There is literally no reference in the contract to any other sorts of disability. The maxim, *"Expressio unius est exclusio alterius,"* applies with peculiar significance here.

In the case of *United States F. & G. Co. v. Guenther,* 281 U. S., 34, 50 S. Ct., 165, 166, 74 L. Ed., 683, 72 A. L. R., 1064, the Supreme Court of the United States was considering the conditions of a policy of insurance which

provided against liability for injuries incurred by one driving an automobile and who is "under the age limit fixed by law." The insured was 16 years of age; the ordinance of the city where he was driving fixed the age limit at 18 years. The insurance company denied liability. On trial, the issue was made that the term "fixed by law," as used in the policy, was ambiguous for that an ordinance of a city was not covered by such provision. The case came to the United States Supreme Court. That Court approved the rule that, where ambiguity exists in an insurance contract, that construction will be adopted which is most favorable to the insured. It then said: " 'But the rule is equally well settled that contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' Applying that rule here, we think that when the words of the exclusion clause are taken in their ordinary meaning they are free from any ambiguity that requires them to be construed most strongly against the Company. *The plain and evident purpose of the clause was to prevent the Company from being held liable for any accident occurring while by reason of the age of the operator the automobile was being operated in violation of law.*" (Italics added.)

The language in that policy was possibly open to the interpretation that the term "fixed by law" related to a statutory or constitutional law, and not to the ordinance of a city. The language of the policy in the case before this Court is free from ambiguity.

In the case of *Parker v. Jefferson Standard Life Ins. Co.,* 158 S. C., 394, 155 S. E., 617, 618, the disability clause of the policy provided that *"upon due proof"* of disability the company would "grant an endowment for the face value of the policy, under which no premiums will be required, payable in ten equal annual installments, the first installment to

be paid immediately upon receipt of due proof of any such disability or incapacity." January 20, *1927,* the insured became disabled. The 2d day of April, *1929,* "due proof" of disability was first presented to the company. The insured sued for the installments for the years 1927, 1928 and 1929. The company contended that it was only liable under the disability clause of the policy for the first installment, which contention was sustained by the Circuit Court and by this Court. This Court recognized the rule that in cases of ambiguity the policy is to be construed most strongly against the company, but it said: "Yet the policy of insurance represents a solemn contract where the parties, legally capable of contracting, have voluntarily agreed upon their own terms and consented to their own conditions, and, in the absence of waiver or a prevention of performance by one party through the act of the other pursuant to a liberal construction in cases of doubt and ambiguity in favor of the insured, must be enforced in accordance with its plain meaning, and not violated or disregarded by the courts"—citing *Perkins v. Life Ins. Co.,* 93 S. C., 88, 76 S. E., 29.

In the case of *Bergholm v. Peoria Life Ins. Co.,* 284 U. S., 489, 52 S. Ct., 230, 231, 76 L. Ed., 416, involving the construction of a life insurance policy, the Supreme Court of the United States said: "It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted (citing authorities). This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings. Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of am-

biguity, in their plain, ordinary, and popular sense"—citing other authorities.

Judged by this rule it was the duty of the presiding Judge to construe the meaning of the words of the disability clause. Instead he permitted the introduction of testimony, not to explain the meaning of the language used, but to show language which inserts a new and wholly different contract into the written contract.

Was the testimony of S. P. Chapman and J. H. Green admissible? Chapman testifies that, when he was negotiating these three policies with the agent of the company, he asked the agent "about the disability clause."

"Q. And he said it meant what? A. He said it meant the loss of eyes, arms, etc. And then I asked him about the total and permanent disability clause. He said that covered any disease. * * *

"Q. Following that construction by him, did you read that clause? A. Yes, sir.

"Q. Then as a result of reading the clause, and the result of his statement you thought you were buying what with regard to disability? A. If she got totally and permanently disabled from any cause they would pay half of it, and issue her a full paid up policy."

Mr. Chapman says he is a man of education; that he has never detected anything wrong with his intelligence; that he has some ten or twelve of these policies on his wife and other members of his family and seven large policies on his own life; that he read and understood the disability clause in each before closing the negotiations for "buying" them. It is strange that he could not himself construe this definite written contract which he swears he read and which he could not fail to understand.

There is no allegation of fraud in the complaint; there is no request to reform the written instrument. They are standing on it as it is written. In the case of *Hawkins v. North Carolina Life Ins. Co.,* 170 S. C., 478, 170 S. E., 833, 835,

decided September 23, 1933, Mr. Chief Justice Blease, in a concurring opinion in which a majority of the Court concurred, said this: "It is my opinion that the complaint did not charge any fraudulent act on the part of the insurance company, or any of its agents. Neither was there ambiguity in the language of the policy. So the testimony * * * of one of the agents as to the terms of the policy was improperly admitted."

In the case of *Southern Iron & Equipment Co. v. Bamberg, E. & W. Ry. Co.,* 151 S. C., 506, 149 S. E., 271, 277, this occurs: "We do not think that the evidence complained of in any manner varied, altered, or contradicted the written contract. Such evidence was in response to the allegations of fraud in respondent's answer"—citing *Continental Jewelry Co. v. Kerhulas,* 136 S. C., 496, 134 S. E., 505.

But for such allegations of fraud the evidence would not have been admissible.

The matter is distinctly ruled and settled by the case of *Gem Chemical Co. v. Youngblood,* 58 S. C., 56, 36 S. E., 437, where this is found:

"The only grounds upon which the defendants relied to defeat the plaintiff's recovery herein were fraud, misrepresentation, and want of consideration in the acceptance of the draft. The Circuit Judge (Watts—afterwards Chief Justice), ruled that under the pleadings these grounds could not be considered. The construction of the account stated presented a question of law to be determined by the Court, as it does not contain any words of a doubtful meaning, which required the jury to decide in what sense they were used. If the Circuit Judge was correct in ruling that the grounds relied upon by the defendants could not be considered, as they did not properly arise under the pleadings, it was his duty to instruct the jury as to the force and effect of the said instrument of writing. * * *

"This brings us to a consideration of the second question, whether the presiding Judge erred in excluding evidence to

the effect that the account stated was procured by fraud and misrepresentations. In 9 Enc. Pl. & Prac., pp. 684, 685, it is said: 'Fraud is never presumed, and in order to entitle a party to relief, either at law or in equity, on that ground, it is essential that the fraud be distinctly alleged in the pleadings, so that it may be put in issue, and evidence thereof given. This rule is applicable as well to the pleadings of the plaintiff as to those of the defendant. In the absence of such an allegation, evidence of fraud will not be received at the trial.' "

It is evident that the testimony of the witnesses ██ Chapman and Green could not be received on the ground that fraud or misrepresentations had been practiced on Mr. Chapman. It does not positively appear that the plaintiff, Ella Chapman, ever knew of these oral statements now imputed to one who is now said to have been an agent of the insurance company.

The testimony of Chapman and Green was inadmissible further because it added to the terms of a written contract and thereby altered, varied, and contradicted it, against the established canon of the law.

In the case of *Kentucky Wagon Manufacturing Co. v. Supply Co.*, 77 S. C., 92, 57 S. E., 676, 677, 122 Am. St. Rep., 540, this Court said, quoting from 2 Page on Contracts, § 1111: "If the parties have used words which have an ordinary meaning, free from ambiguity, and no technical meaning is shown, extrinsic evidence is inadmissible to show that the parties used such terms in a sense different from their ordinary meaning, *as the only effect of such evidence would be to contradict the legal effect of the language which the parties themselves used.*"

From the same case we take this: "The charge would have been free from error if the testimony had been *explanatory* instead of *contradictory* of the terms used in the agreement."

In the case at bar the terms contained in the contract of

insurance, in the plainest language, according to every rule of grammatical construction, relate only to losses of both hands, or both feet, or one hand and one foot, or the loss of eyesight. The testimony admitted over objection seeks to show a parol statement that the phrase covered disability from any cause. Such testimony seeks to inject into the written contract terms and conditions in direct contradiction of the plain terms of the written contract.

In the case of *Batesburg Cotton Oil Co. v. Southern Ry.*, 103 S. C., 494, 88 S. E., 360, 362, Mr. Justice Watts, for the Court, said: "Every one is presumed to know the effect of a contract that he signs, and misrepresentations as to the legal effect made to him by the other party will not invalidate the contract. *The plaintiff had no right to rely on the statement made as to what the legal effect of the contract would be. By ordinary vigilance the plaintiff could have ascertained whether the opinion of the party making the statement as to what the law was was correct or not in reference to the contract.*" (Italics added.)

In the case before us the husband of the insured negotiated the contract of insurance. By his own admission he is a man of education and acumen of a high order; he admits that he read the disability clause of the policy (which is plain and lacking in ambiguity); yet he is allowed to testify that he accepted the statement of an agent of the company that the policy covered a class of disability not even hinted at in the policy.

In 1 Joyce on Insurance (2d Ed.), § 185-A, this statement is made: "But a policy cannot be changed or even altered by parol evidence where the party is named and his interest specified, except fraud or mistake be alleged. The intent as shown by the instrument itself must be sought, since the same principles of construction obtain in this regard as in other contracts."

From 22 Corpus Juris, § 1621, the following is taken: "But where a written contract, which a party seeks to re-

scind on the ground of oral fraudulent representations of the other party, contains provisions negativing the claim that the representations were relied on, or contains other representations on the same ·subject inconsistent with the alleged oral representations, the oral representations are inadmissible, as varying the contract. With the limitation that while a party may in an action at law avoid the contract by proof of fraud, he cannot in such an action establish by parol evidence and recover upon an agreement different from that expressed in the writing; the rule admitting evidence of fraud applies in actions at law as well as in suits in equity."

In the case of *J. B. Colt Co. v. Britt*, 129 S. C., 226, 123 S. E., 845, 847, Mr. Justice Marion, for the Court, said: "If the written contract, the signing of which was admitted by defendant, was a valid contract, defendant was, of course, bound by the terms and conditions thereof. If bound by the written contract, it is entirely apparent that he was not entitled to introduce evidence to add to, vary, or contradict its provisions. That the evidence, including the memorandum in writing signed by the agent, offered by defendant to establish that plaintiff through its agent had agreed to install the lighting plant, was obnoxious to the parol or extrinsic evidence rule, in that it tended to add to, alter, and contradict the written contract, is not open to serious question. * * * The evidence offered to establish the installation agreement not only tended to change the force and effect of the written contract as consummated, by adding a material condition—a condition so material that defendant relied upon its absence from the written contract to avoid it—but also tended directly to contradict the express stipulations therein contained to the effect that the instrument covered 'all the agreements between the purchaser and the company.' * * * If, therefore, the written contract sued on was a valid contract which bound the defendant, there can be no question that the evidence offered and introduced by

him to establish the extraneous installation agreement was properly stricken out by the trial judge."

It is needless to cite other authorities.

It is patent that the testimony of the witnesses Chapman and Green was obnoxious to the parol evidence rule for the reason that it adds to, varies, and contradicts the written contract of insurance.

▮ The testimony of J. H. Green is further incompetent because it is obnoxious to the rule of law *res inter alios acta,* which is thus defined by Black's Law Dictionary (3d Ed.), p. 1540: "Things done between strangers ought not to injure those who are not parties thereto" —citing Co. Litt., 132; Broom's Maxims, 954, 967.

This witness testified that in 1929 and 1930 he had been a soliciting agent of the defendant insurance company. Over objection, he was allowed to testify as follows:

"Q. In selling life insurance for the Metropolitan Life Insurance Company, how would you get your instructions as to the terms of the policy which you were to represent to the public? A. Well, the assistant manager gave them to us.
\* \* \*

"Q. Go ahead, Mr. Green. A. When you first started working for the Insurance Company they take you around canvassing the debit, so you could present the policies intelligently to the prospect, you know. And our interpretation of that disability clause was, that, anything that totally disabled you, was anything that knocked you out."

We think there was never a case which more justly called for the application of the rule of *res inter alios acta,* to exclude this testimony.

In the case of *J. B. Colt Co. v. Robinson,* 137 S. C., 224, 135 S. E., 312, 313, the action was on a note given as part of the purchase price of a carbide lighting plant. Among other defenses it was alleged that the defendant was induced to sign the note by fraud and misrepresentations on the part

of the plaintiff. Mr. Justice Stabler, delivering the opinion of the Court, said:

"The testimony complained of, and which was admitted by the circuit judge over the objection of the plaintiff, had to do with alleged transactions between the plaintiff and persons other than the defendant in the present case, with reference to the plaintiff's methods of dealing with such persons regarding the sale of lighting plants similar to that sold to the defendant, and to statements alleged to have been made to these persons by agents of the plaintiff during such negotiations.

"No connection or relationship between these transactions and the transaction alleged to have taken place between the plaintiff and the defendant was shown, and this testimony was clearly inadmissible."

It is clear that the testimony of the witness was incompetent. That it was prejudicial will hardly be denied. It went to aid in making an oral contract in direct contradiction of the written one.

The counsel for the defendant objected to all of the testimony of the witnesses Chapman and Green, which is the basis of the exceptions, and moved to strike it out, which motion was denied.

It is evident that there are errors vitally affecting the issues involved. The exceptions are sustained, and the judgment of the Court below is reversed. This judgment affects all of the three appeals.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. JUSTICE CARTER concurs in result.