15659

STATE v. CENTER

(30 S. E. (2d), 760)

*Mr. Marvin R. Reese,* of Greer, S. C., and *Mr. W. E. Bowen,* of Greenville, S. C., Counsel for Appellant,

Solicitor W. A. Bull, of Greenville, S. C., appeared for The State, Respondent.

June 16, 1944.

Mr. Associate Justice Taylor delivered the Opinion of the Court:

This case comes by way of appeal from the December, 1943, term of General Sessions Court for Greenville County where the defendant, Maggie Phillips Center, was indicted upon two counts as follows:

First: That Maggie Phillips Center on the 17th day of October, 1943, in the County of Greenville and State of South Carolina, did willfully and unlawfully store and keep in her possession 59 pints alcoholic liquors not for her own personal use, or her immediate family or for religious purposes which did have South Carolina revenue stamps affixed to the container and containers thereof, against the form of the statute in such case made and provided and against the peace and dignity of the State.

Second: That Maggie Phillips Center on the 17th day of October, 1943, in the County of Greenville, State of South Carolina, did willfully and unlawfully receive and accept for unlawful use 59 pints alcoholic liquors, against the form of the statute in such case made and provided and against the peace and dignity of the State.

She was tried at said term of Court before his Honor, E. C. Dennis, Presiding Judge, and a jury, was found guilty and sentenced to eighteen months' imprisonment and the payment of a fine of Five Hundred ($500.00) Dollars; the sentence further provided that, upon the payment of the fine, she would be placed on probation for eighteen months.

Within due time, notice of intention to appeal from said judgment and sentence was served upon the Solicitor, and she now appeals to this Court upon the following exceptions:

1. His Honor, the Presiding Judge, erred, it is respectfully submitted, in refusing appellant's motion to quash the indictment:

2. His Honor, the Presiding Judge, erred, it is respectfully submitted, in making the following remark during appellant's motion to quash the indictment, in the presence of the prospective jurors who were to sit upon appellant's case: "Then there have been a lot of people convicted that ought not to have been."

3. His Honor erred, it is respectfully submitted, in permitting the witness, M. B. Leister, over appellant's objection, to testify that Dick Phillips, a son of appellant, came to the shop on the 19th day of October and whipped witness on the job.

4. His Honor, the Presiding Judge, erred, it is respectfully submitted, in permitting, over the objection of appellant and in response to question by the Court, M. B. Leister, witness for the State, to testify that Dick Phillips, a son of appellant, stated to him "that (the beating administered by Phillips to Leister) was not half what he was going to do for me if I swore against his mother."

5. His Honor erred, it is respectfully submitted, in permitting the witness, M. B. Leister, to testify that Dick Phillips "blacked" witness' eye.

6. His Honor erred, it is respectfully submitted, in re-marking, during the cross examination of the witness Leis-ter by one of appellant's counsel, that the question of pre-senting a true bill against Leister for perjury "would be a matter for the Solicitor."

7. His Honor, the Presiding Judge, erred, it is respect-fully submitted, in refusing appellant's motion for a direct-ed verdict of not guilty.

8. His Honor, the Presiding Judge, erred, it is respect-fully submitted, in interrupting Mr. Marvin R. Reese, one of appellant's counsel, in his address to the jury, as set out in the record.

9. His Honor erred, it is respectfully submitted, in failing to charge the jury the law of circumstantial evidence

The first count charged that the defendant did un-lawfully store and keep tax paid and stamped alco-holic liquors not for her or her immediate family or for religious purposes against the form of the Statute made and provided.

Section 1896 of the 1942 Code of Laws for South Car-olina is very clear on this subject. Among other things it states that it shall be unlawful for any intoxicating liquors to be stored or kept except for one's own personal use, or that of his immediate family or for religious purposes, etc.

This part of the first exception charging that there was error in refusing to quash the indictment on the grounds that it did not state an indictable offense is therefore over-ruled.

The second part of the first exception is based upon appellant's motion to quash the indictment on the grounds that indictment failed to allege an indictable offense in that the whiskey was stamped and tax paid and in the dwelling house of the defendant. Reading the indictment closely we find that appellant was charged with willfully re-

ceiving and accepting for unlawful use 59 pints of alcoholic liquors.

The Statute providing that the manufacture, sale, barter or exchange, receipt or acceptance for unlawful use, delivery, storing and keeping in possession within the State of any alcoholic liquor except as provided in the Act, is hereby prohibited, creates four distinct classes of offenses.

Under the Statute prohibiting the manufacture, sale, barter or exchange, receipt or acceptance for unlawful use, delivery, storing and keeping in possession within the State of any alcoholic liquor except as provided in the Act, the manufacture, sale, barter or exchange of liquor is prohibited without regard to whether any of the other elements of the Statute are present and the receipt or acceptance for unlawful use is a complete classification of prohibitions and may be so charged in an indictment. Sec. 1848, Code of 1942, *Jackson v. South Carolina Tax Commission*, 192 S. C., 350, 6 S. E. (2d), 745.

Therefore, this exception cannot be sustained.

During the argument of the above motion in the presence of the prospective jurors the presiding Judge, in reply to appellant's contention, stated in overruling the motion "then there have been a lot of people convicted that ought not to have been" and appellant contends this was prejudicial to the defendant.

Since the first exception was overruled, it necessarily follows that this contention cannot stand as the two are very closely connected and this Court cannot see wherein defendant was prejudiced by the statement of fact which was obvious, and no complaint having been made at the time, this exception is overruled.

Exceptions three, four and five are so closely interrelated that they will be considered at the same time. M. B. Leister, witness for the State, testified that 30 or 40 minutes before the officers got there he had purchased two pints of tax paid

liquor at $4.00 per pint and that he had purchased such whiskey four or five times within the last three or four months. Upon cross examination by Mr. Bowen, the witness testified as follows; here a portion of the record is reproduced in order that the questions might be better understood:

"Q. How often did you say you had been there, Mr. Leister? A. I have been going there ever since 1923.

"Q. You have been down there a good many times, then? A. Yes, sir, plenty of times.

"Q. And drank a great deal? A. I drank a right smart.

"Q. About how much do you drink a week? A. I may go for a month and not drink any.

"Q. Now, they had you up as a witness in Bates Aiken's Court here in a case against Mrs. Phillips? A. Yes, sir.

"Q. That was for the same liquor? A. Yes, sir.

"The Court: In what Court?

"By Mr. Bowen: In the magistrate's Court; Bates Aiken's Court.

"Q. In that case they had you as a witness? A. Yes, sir.

"Q. And what did you tell Judge Aiken? A. You want me to bring it out clear?

"The Court: Yes, any way you want. A. All right, on October 17th, Dick Phillips come to the shop, no, that is when they were caught, that was on Sunday; on the 19th day of October, Dick Phillips come to the shop and whippel me on my job.

"By Mr. Bowen: We object, unless it is connected with this.

"The Court: I will let him go on and say. A. He came to the shop and whipped me on October the 19th.

"The Court:

"Q. Who was that? A. Her son; and I stepped in to the telephone and called the Chief of Police, Gus Finley, and had him picked up.

"By Mr. Bowen: Q. All right? A. He said if I got on the stand and swore against his mother—

"By Mr. Bowen: This is subject to my objection.

"The Court: Yes, I overrule the objection. A. The reason I didn't testify I had been threatened.

"The Court:

"Q. Who threatened you? A. Dick said that was not half what he was going to do for me if I swore against his mother.

"By Mr. Bowen: Q. How big is Dick? A. He weighs about 175 pounds.

"Q. How much do you weigh? A. About 150.

"Q. And what did you tell Judge Aiken? A. They said they couldn't do nothing with me.

"Q. What did you swear in Judge Aiken's Court? A. The only thing I said I said I didn't know anything about it.

"Q. And you said you had been drunk for a long time and you didn't know a thing about it, or words to that effect? A. No, sir, I said I had been drinking.

"Q. All right, and that you had not bought any liquor from Maggie Phillips; you swore that, or told Bates Aiken that in his Court up there? A. I had a reason.

"The Court: Q. Did you do it? A. Yes, sir.

"By Mr. Bowen: Q. And you were sworn when you said it? A. Yes, sir."

Re-direct Examination by the Solicitor

"Q. Why did you swear you knew nothing about it up in Bates Aiken's Court, Mr. Leister? A. Because I had been threatened.

"Q. Threatened by who? A. Dick Phillips.

"Q. And what had he done to you? A. Blacked my eye.

"Q. Does that son stay there with Maggie Phillips? A. Yes, sir; she paid his fine."

As will be clearly seen, this testimony was not brought out by the defense on cross examination but rather by the Court itself who proceeded to examine the witness. Counsel for the defense asked the question "What did you tell Judge Aiken?"after witness testified in magistrate's Court with

regard to the same case, but the defense did not go into the reasons why he had told a different story before the magistrate.

At this juncture the Court not only elicited the testimony from the witness that he was whipped on the job and threatened by Dick Phillips two days after Maggie Phillips Center (Dick Phillips' mother) was arrested, but it did so over the timely and repeated objections of counsel for defense.

Then again the Court asked, "Who threatened you?" and the witness replied, "Dick said that was not half what he was going to do for me if I swore against his mother." There is no testimony whatever that the defendant had any knowledge of such transaction, therefore they are the acts of a third party and such testimony is prejudicial where it is not shown the accused was privy thereto in that it is abnoxious to the rulé of law *res inter alios acta* which is defined as " 'Things done between strangers ought not to injure those who are not parties thereto'." *Chapman v. Metropolitan Life Insurance Company,* 172 S. C.; 250, 173 S. E., 801, 807.

Not only did witness testify that he had been threatened, but testified to the conversation with Dick Phillips, a third party. In the case of *State v. Suber,* 82 S. C., 159, 63 S. E., 684, 685, the learned Justice Woods said, "Had the witness been allowed to bolster up his testimony by narrating the conversation, a serious question would have been presented. But the witness, without going into the conversation at all, merely stated as a substantive fact that he had omitted to testify at the inquest to certain facts within his knowledge because he was afraid to tell all he knew," and there were no threats in that case. The witness was merely trying to explain why his testimony at the trial was stronger than that given at the inquest and the Court said that he could by merely stating the fact that he was afraid, but a serious question would be presented if he had been allowed to boost his testimony by narrating the conversation.

In the case of *Dorris v. Commonwealth of Kentucky*, 227 Ky., 809, 14 S. W. (2d), 136, 137, 62 A. L. R., 133, it was held that it was prejudicial error where it is not shown that accused knew of any threats for witness to testify in response to question as to why he did not appear when case was first called to trial that "From the threats that have been made I didn't know whether to come up here or not."

In the above-cited case the ones alleged to have made threats were the mother and sister of the accused while in instant case it was the son of the accused. In neither case was there any testimony showing that the accused had any knowledge of such threats. In the above case objection was made to the question and answer which was overruled and no other objections were made by defendant's counsel, and upon cross examination, went into the threats fully yet the Courts held it prejudicial in that case because the case was a close one on the evidence. In instant case counsel for defendant repeatedly objected to such testimony and only cross examined the witness after stating to the Court that he was doing so subject to his objections. By doing so, he preserved such rights as the defendant had at the time of the making of the first objection and no error could be said to be cured thereby.

It is the opinion of this Court that it is improper for a witness to testify to threats by a third party unless it is shown that the accused is privy thereto.

For the above-stated reasons this Court is of the opinion that the judgment and sentence of the lower Court should be reversed and the case remanded for a new trial.

In view of the above, it is unnecessary that the Court consider the other exceptions.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, and OXNER concur.

Mr. Associate Justice Stukes (concurring):

Defendant's counsel having developed on cross examination, that Leister's testimony was in conflict with that given by him at the preliminary hearing before the magistrate, I think it was competent to allow this witness to explain the inconsistency. *State v. Suber,* 82 S. C., 159, 63 S. E., 684. It was permissible for him to state that he had been threatened and was afraid to tell the truth before the magistrate. But over objection of defendant's counsel, the learned trial Judge permitted the witness to go much further than the statement of the substantive fact that he had been threatened and was afraid when testifying at the preliminary hearing. He was allowed to go into all the details, permitting the jury to infer that the defendant was a party to this effort to suppress evidence, when there was no foundation in the testimony to connect the defendant with the alleged intimidation. The fact that defendant paid the fine imposed upon her son, Dick Phillips, does not warrant the inference that she thereby sanctioned what he had done, as it is perfectly natural for a mother to render such assistance to a son although she may disapprove of his conduct.

For these reasons, I agree that a new trial should be had.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne and Oxner concur.