### THREE STATES COAL CO. v. MOLLOHON MFG. CO.

#### (135 S. E., 380)

1. CONTRACTS.—In ascertaining intention of parties to contract, whole instrument should be considered and effect given, if practicable, to every clause and word therein.

2. SALES—SALE CONTRACT, PROVIDING THAT COAL SHIPMENTS FOR ANY ONE MONTH SHOULD NOT BE CUMULATIVE WITHOUT PARTIES' CONSENT, DID NOT DEFEAT SELLERS' RIGHT OF ACTION FOR FAILURE TO RECEIVE CONTRACT AMOUNT.—Contract for sale of coal, providing that any coal due to be shipped, but not shipped, in any one month, would not be cumulative without consent of parties, *held* not to preclude distributing shipments thereof over remaining portion of contract period, and did not defeat seller's cause of action for failure to receive contract amount.

3. CONTRACTS.—Particular paragraph of contract must be construed in connection with entire instrument.

NOTE: Intention of parties to contract to be ascertained from language used, see 6 R. C. L., 841; 2 R. C. L. Supp., 222; 4 R. C. L. Supp., 444; 5 R. C. L. Supp., 373; 6 R. C. L. Supp., 413.

Before DeVore, J., Newberry, April, 1925. Affirmed.

Action by the Three States Coal Company against the Mollohon Manufacturing Company. Judgment overruling a demurrer to complaint, and defendant appeals.

*Messrs. Hunt, Hunt & Hunter,* for appellant, cite: *Intention of parties to be gathered from whole contract:* 84 S. C., 148; 65 S. E., 1044. *Object of construction of contract:* 102 S. C., 227; 85 S. E., 1064; 42 S. C., 342. *Every word in contract to be given affect:* 109 S. C., 112; 95 S. E., 341; 104 S. C., 378; 89 S. E., 358. *Construction of unambiguous contract is for the Court:* 103 S. C., 494; 88 S. E., 360; 92 S. C., 95; 75 S. E., 368; 26 S. C., 258; 2 S. E., 19. *Duty of mitigating damages:* 102 S. C., 452; 86 S. E., 947; 90 S. C., 407; 73 S. E., 1017; 85 S. C., 430; 67 S. E., 549.

*Mr. Steve C. Griffith,* for respondent, cites: *Question of mitigation of damages not raised on circuit cannot be raised on appeal:* 87 S. C., 560; 70 S. E., 316. *Question of mitigation of damages is matter of defense:* 8 R. C. L., 618.

November 4, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action on a contract for sale of coal.

The complaint alleges that the plaintiff and the defendant, on or about September 1, 1923, executed a written contract for the sale to the defendant by the plaintiff of 2,000 net tons of coal of 2,000 pounds each, at a rate of $2.40 per net ton, to be shipped, approximately one car weekly, beginning September 1, 1923, and continuing until April 15, 1924, a copy of the contract being attached to the complaint and being set forth in full in this opinion; that the defendant on divers dates during the continuance of the contract notified and directed the plaintiff not to ship coal according to the terms of the contract and that during the said period the plaintiff by the direction of the defendant was allowed to ship only four cars of said coal, which cars

were shipped on November 12, November 14, November 19, and November 26, 1923, and which aggregated a total tonnage of only 219.7 net tons, and that the plaintiff was not allowed to ship the balance of coal called for by the contract, to wit, 1,780.3 net tons; that during all of the contract period the plaintiff was ready and able to deliver said coal, so notified the defendant, and requested the defendant to allow delivery of said coal, and that the defendant refused and neglected to accept the coal and directed the plaintiff not to make shipments thereof. Judgment in the sum of $1,087.78, alleged to be due as damages for breach of the contract, is demanded.

The contract sued on is as follows:

"Three States Coal Company,

"Bluefield, W. Va.

"Coal Contract.

"Three States Coal Company, of Bluefield, W. Va., hereinafter known as the seller, sells to Mollohon Manufacturing Company, of Newberry, S. C., hereinafter known as the buyer:

"Quantity: Two thousand (2,000) net tons of 2,000 pounds each. Approximately one car weekly, beginning at once and continuing until April 15, 1924.

"Grade: 'Star' banner run of mine—hopper or drop door equipment.

"Price: Two dollars and forty cents ($2.40) per net ton f. o. b. cars at mines.

"Contract effective September 1, 1923. Contract expires April 15, 1924.

"Conditions as below to govern this agreement:

"(1) Terms of payment, cash on or before the tenth of each month for all coal shipped during the preceding month. Accounts not paid when due will be subject to sight draft without notice and with interest from date of maturity. Terms of payment being essence of this contract, noncom-

pliance therewith shall give the seller privilege of cancellation, and waiver in any case shall not be construed as destroying this right, and, also, the right to cancel this contract is especially reserved in the event the seller has reason to believe that the credit of the buyer is impaired.

"(2) In case of strikes, accidents, delay in transportation, shortage of labor, failure of the railroads to supply equipment suitable for loading or transporting the coal hereby sold and purchased, partial or complete embargoes imposed by originating railroads or connecting railroads over which shipments must be forwarded to the destination specified herein, stoppage or the partial stoppage of the mining of this coal or its shipment, to labor agitations and disturbances, to lockouts, to mine accidents or other causes beyond the immediate control of the seller, it is understood and agreed that the seller is only obligated to deliver the percentage of the coal named in this conrtact equal to the percentage of the capacity of the mine or mines producing the grade of coal named which is actually shipped during such period.

"(3) In case of failure by the buyer to order or accept this coal each month as agreed, the seller may, during the term of this contract, reduce the said tonnage the quantity the buyer failed to order or accept and shall also have the right to reduce the monthly installment for any or all succeeding months to the amount of the minimum tonnage taken in any of the preceding months.

"(4) Actual railroad weights, as ascertained by initial lines are to govern all settlements.

"(5) Shipments made by the seller to the buyer during any one month shall constitute fulfillment of this contract for thatmonth and the tonnage herein contracted shall be cumulative only for such one-month period, except by mutual agreement."

The defendant demurred to the complainton the ground that it did not state facts sufficient to constitute a cause of

action in that:

"I. Said complaint is based on the contract attached hereto as an exhibit and said contract shows on its face by the fifth paragraph thereof that shipments made during any one month constitute fulfillment for such month and that the tonnage should not be cumulative except for one-month period except by mutual agreement, and the complaint does not show that any such agreement was made.

"II. Because the contract on which this action is based clearly shows that the tonnage contracted for should not be cumulative except by mutual agreement of the parties and the complaint does not show such agreement.

"III. Because the complaint, together with the contract which is made a part thereof, shows that the plaintiff was not required to hold tonnage for the defendant but that in case defendant failed to order the amount of tonnage in any one month, the plaintiff could reduce tonnage for succeeding months to said amount and was only liable to the defendant for the tonnage actually ordered.

"IV. Because complaint shows that the action is based entirely on the contract attached thereto as an exhibit, and such contract, construed as a whole, shows that the tonnage was not to become cumulative against either party and that the contract was fully performed when the amount of tonnage was shipped that was actually ordered."

The demurrer was overruled, and appeal is made from the order overruling the demurrer. The exceptions of the defendant are as follows:

"I. Because the Court erred in holding that, under said contract, the plaintiff was bound to deliver and the defendant bound to accept the entire tonnage called for by said contract in the specified time, but should have construed said contract to mean that the tonnage did not become cumulative, except by mutual consent, and there was no obligation on the part of the defendant to order or the plaintiff to ship the entire tonnage.

"II. Because the Court erred in not holding that the complaint showed on its face that the plaintiff was not damaged by the failure of the defendant to order and accept the entire tonnage, as the contract on which complaint was based, and which was made a part thereof, clearly shows that the plaintiff was not bound to ship only what was ordered by defendant, and the defendant was not bound to accept only what was ordered by it.

"III. Because the Court erred in holding that, under said contract, the defendant would be liable in damages for its failure to take the entire amount of said coal, provided the plaintiff was willing and ready to ship same, but should have held that, under said contract, the plaintiff had a right to reduce the tonnage for any month to the amount ordered and accepted, and was not liable to defendant for any more, and that, under no circumstances, was the tonnage to be cumulative against either party, except by mutual consent.

"IV. Because the Court erred in holding that the complaint stated facts sufficient to constitute a cause of action, but should have held that the action was based entirely on the contract attached to the complaint as an exhibit and such contract construed, as a whole, shows that the tonnage was not to become cumulative against either party, and that the contract was fully performed when the amount of tonnage was shipped that was actually ordered."

The decision in this case involves the construction of the contract in question.

Certain well-established rules are followed by the Courts in the construction of written contracts. The purpose of all rules of construction is to ascertain the intention of the parties to the contract, and in ascertaining this intention the whole instrument should be considered and effect given, if practicable, to every clause and word in it. *Smith v. Clinkscales,* 102 S. C., 227; 85 S. E., 1064, and *Stewart v. Morris,* 84 S. C., 148; 65 S. E., 1044.

In 6 R. C. L., 841, quoted with approval in *Chatfield-Woods Company v. Harley,* 124 S. C., 280; 117 S. E., 539, it is said:

"Where the language of the contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unsuual, or such as reasonable men would not enter into, the interpretation which makes a rational and probable agreement must be preferred."

In 6 R. C. L., 837, also quoted with approval in the same case, it is said:

"The subject-matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms they use, and, when these are ascertained, they must prevail over the dry words of an agreement."

In *Merrill-Ruckgaber Company v. U. S.* (49 Ct. Cl., 553, affirmed), 241 U. S., 387; 36 S. Ct., 662; 60 L. Ed., 1058, also quoted with approval in the *Chatfield-Woods case,* it is said:

"In construing a contract, the Court will ascertain the intention of the parties, and to that end will, as far as possible, ascertain the situation of the parties, as well as the purposes had in view at the time the contract was entered into."

In *Fairbanks v. Twin City Supply Company,* 170 N. C., 315; 86 S. E., 1051, also quoted with approval in the *Chatfield-Woods case,* it is said:

"All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results."

By its exceptions and argument before this Court, the appellant practically takes the position that, under the terms of the contract, specifically para-

graphs 3 and 5 thereof, the plaintiff (seller) is not bound to deliver nor the defendant (buyer) to accept the entire tonnage called for by the contract, and that the contract was fully performed when the amount of tonnage was shipped by the plaintiff that was actually ordered out by the defendant.

We cannot agree with this contention. Paragraph 3 of the contract gives to the seller the right, under certain circumstances, to reduce the total tonnage, but imposes upon it no obligation to make such reduction nor gives to the buyer the right to reduce the tonnage to be delivered and accept under the terms of the contract.

Nor does paragraph 5 of the contract support the appellant's views. Although this paragraph may be somewhat obscure, we think that it is clear enough, when taken with the other provisions of the contract, in accordance with the established rules of construction, for this Court to determine its meaning. It must be construed, of course, in connection with the rest of the instrument. The contract begins by providing for the sale of 2,000 tons of coal of a certain grade at a certain price, to be delivered at a certain rate, and within a certain period. It sets out the terms of payment and gives to the seller the privilege of cancellation, in case accounts for coal already shipped are not paid when due, and limits the liability of the seller as to the tonnage to be delivered in case of strickes accidents, etc. These provisions make it clear that the seller and the buyer had in mind and intended to execute a contract with certain definite provisions. If paragraph 5 has the meaning attributed to it by the appellant, then it practically nulifies the balance of the contract and it is difficult to understand why this contract was ever executed at all. It seems to us that if it had been intended that the seller should actually deliver to the buyer, at the price named, only so much coal as the buyer might order, a much simpler agreement clearly expressing this purpose could and would have been executed.

Under our view of the case, paragraph 5 simply means that any coal due to be shipped, but not shipped, in any one month, would not be cumulative, without the consent of both parties, at any time subsequent to such month and prior to the closing date of the contract period, but shipments thereof could be distributed over the remaining portion of the contract period. This construction appears to us to carry out the intention and to be in accord with the purposes of the parties to the contract, as evidenced by an examination of the entire instrument; to make the contract fair and such as prudent, reasonable men would enter into; and to be sensible and reasonable construction, and such as would not lead to absurd consequences or unjust results.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. JUSTICE WATTS and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE BLEASE disqualified.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN (dissenting): I think that the demurrer of the defendant should have been sustained for the reasons which follow.

I think that paragraph 3 of the contract has nothing at all to do with the controversy. It provides for two distinct options which are open to the plaintiff, in the event of the defendant's failure to order or accept shipments of coal for each month as agreed. One option is, under these circumstances, to reduce the tonnage contracted for (2,000 tons) to the extent of the quantity which the buyer may have refused to order or accept. The other option, under the same circumstances, is to reduce the monthly installments for the succeeding months to the minimum tonnage taken in any preceding month. Both of these are valuable

to the shipper, in the event that the coal market may advance; he may either reduce the total tonnage contracted for or place a limit upon the shipments for any month.

The plaintiff is making no effort to avail himself of either of these options. Obviously, the coal market has declined and it is consequently to the interest of the shipper to waive both of these options and insist upon his legal right that the defendant shall take or account to him in damages for the entire tonnage contracted for. Paragraph 3, therefore, as stated, is like the flowers that bloom in the spring; it has nothing to do with the case.

Paragraph 5 is the troublesome feature of the case. It provides:

"Shipments made by the seller to the buyer any one month shall constitute fulfillment of this contract for that month, and the tonnage herein contracted shall be cumulative only for such one-month period, except by mutual agreement."

The first criticism I have of this paragraph is that the shipper may ship any quantity he may wish during any month, one car even, and claim the protection of this paragraph that such a shipment constitutes a fulfillment of the contract for that month; that is what it says. By this (doubtless fine print) clause, the shipper finds a loophole through which he can escape the losses incident to an advancing market. For this reason the contract lacks mutuality. The question has so lately been fully discussed in the case of *International Shoe Co. v. Herndon*, 135 S. C., 138; 133 S. E., 202, that I will make only a reference to that case.

The last clause in the paragraph:

"And the tonnage herein contracted shall be cumulative, only for such one-month period, except by mutual agreement"—

has given rise to the greatest divergence of opinion as to what it means.

Some confusion has arisen as to the meaning of the word cumulative. I think that an illustration will throw more light upon its meaning than an etymological dissection. Dividends upon common stock in a corporation are forever lost when the directors decline to declare them, when they are passed, as the expression is. They cannot be considered as debts of the corporation. With preferred stock, it is usual to provide that the dividends at a certain rate shall be cumulative; that is, whether declared or not, they become debts of the corporation and bear interest. So with shipments under the contract in question; the weekly shipments, without express agreement, become cumulative within the month and are obligations on both parties; they do not become cumulative after the expiration of the month without express agreement.

Mr. Justice Stabler construes that clause as follows:

"Under our view of the case, paragraph 5 simply means that any coal due to be shipped, but not shipped, in any one month, would not be 'cumulative,' without the consent of both parties, at any time subsequent to such month and prior to the closing date of the contract period, *but shipments thereof could be distributed over the remaining portion of the contract period."*

The first part of this statement is unquestionably correct; but I differentially suggest that the portion underscored by me is in direct conflict with what precedes it.

My construction of the clause is that the deficiency in any one month's shipments, although not made weekly, may be made up by the shipper or demanded by the buyer, within that month, but not afterwards, in the absence of an express agreement subsequently entered into. For instance, four weekly shipments are required in each month; by the 29th, only one may have been made; either party may then require the other three within the month, but not afterwards. If the first shipment is not made in the first week, the second shipment and the first may be made

in the second week; if not made, the third and the other two may be made in the third week; if not, the fourth and the other three may be made in the fourth week. In other words, only the weekly shipments are cumulative, without agreement.

It must be remembered that these contracts are formulated by the shipper, and every provision that he can get by with for his benefit is inserted. This clause was thus isnerted, manifestly, to relieve him from the obligation of cumulating other than the weekly shipments, to relieve him entirely of the deficiencies in shipments after the month in which they were due had expired. It so happens that, in this case, the provision is applicable to the buyer as well as to the shipper; if the shipments, after the expiration of the month, do not become cumulative as a protection to the seller, they should not become so as a protection to the buyer.

The whole case for the plaintiff rests upon the cumulative character of the deficient shipments, which according to the terms of the clause, does not exist except by agreement. This essential is not alleged in the complaint.

The plaintiff's contention is that the defendant agreed to accept deliveries, weekly, during each month; that it failed to order or accept deliveries for September and each of the following months, with the exception of November; that, consequently, it owes the plaintiff damages for such breach. The defendant contends that, under paragraph 5, the plaintiff might have made the shipments for any one month, September, for instance, cumulative, and have insisted upon its right to deliver the four cars for that month at any time within that month; but that it did not make any such claim or demand, and that it cannot now make the shipments for any one month cumulative in the absence of an express agreement.

I have little sympathy for either of the parties to this contract. It appears to be one of unfortunately many in-

stances of the kind where one party has been caught in the toils of an untoward market and is seeking a way out. But, if he is entitled to relief under the terms of the contract, the Court is bound to afford him that relief.

Suppose conditions had been reversed, and, instead of declining, the market had advanced. We would then have a suit by the mill against the coal company for failure to deliver. The coal company would have insisted upon the terms of the contract which it had formulated; that the deliveries for certain months were cumulative only within that month; and their defense would have been sustained. It is a poor rule that will not work both ways. If under circumstances, it would have been sauce for the coal company, under opposite circumstances, it should be sauce for the mill company.