17965

Otis E. BRUCE, Ray Prince, and J. E. WALL as Commissoners of the Inman-Campobello Water District, Appellants, v. Taylor BLA-LOCK, Henry DuPre and DeFoix Kirby, as Commissioners of Public Works of the City of Spartanburg, South Carolina, Respondents.

(127 S. E. (2d) 439)

*Messrs. Gaines & Vermont* and *T. E. Walsh,* of Spartanburg, *for Appellants,*

*Messrs. Odom, Nolen & Foster,* of Spartanburg, *for Respondents,*

September 17, 1962.

Moss, Justice.

The Inman-Campobello Water District in Spartanburg County was created by an Act of the General Assembly of this State, approved April 23, 1954. 48 Stats. 2553. Thereafter, by an Act approved May 4, 1955, the Act creating the District was amended so as to provide for the area of the District and the functions and powers committed to the District. 49 Stats. 1389. By the aforesaid Act, the District was given the authority to build, construct, operate, and mainain water lines and water mains throughout the District, and had the authority to "purchase, or otherwise acquire, a supply of water for its water distribution system, * * * and to enter into contracts for the purchase of water at wholesale."

Section 59-536, as amended, of the 1952 Code of Laws of South Carolina, authorized the City of Spartanburg, or those in charge of its public works, to contract with persons without the corporate limits for the furnishing of water either for domestic or industrial purposes, or both, upon such terms, rates and charges as may be fixed by the contract or agreement between the parties for a period not exceeding fifty years.

Pursuant to the aforesaid authority, the Inman-Campobello Water District did, on August 31, 1955, enter into a contract with the Commissioners of Public Works of the City of Spartanburg, by the terms of which the Commission agreed to furnish water to the District for a period of thirty years in accordance with the various terms and conditions set forth in said agreement. This contract provided, in paragraph three thereof, the following:

"3. The District agrees to pay the Commission for water at monthly intervals. The rate shall be 10¢ per thousand gallons or the published rate, whichever may be lower. The Commission's published rates are hereto attached and made a part of this Agreement. It is further agreed that this

contract is made subject to the rules and regulations of the Commission, and such rules and regulations and the water rates above referred to shall at all times be subject to any change made by the commission affecting all consumers of the same class."

It appears from the record that on April 30, 1957, the Commissioners raised the rate for the water furnished to the District from 10¢ per thousand gallons to 12½¢ per thousand gallons. The higher rate was paid under protest by the District.

This action was instituted by the Commissioners of the Inman-Campobello Water District, the appellants herein, against the Commissioners of Public Works of the City of Spartanburg, the respondents herein, for the purpose of obtaining an interpretation of paragraph three above quoted of the agreement between the parties and for a refund of all amounts paid by the District in excess of 10¢ per thousand gallons of water. The respondents, by answer, assert that under the terms of the agreement they had the right to change the price charged the District at any time provided such charge affected all consumers of the same class.

This case came on to be heard before the Honorable Julius B. Ness, Presiding Judge of the Seventh Judicial Circuit, and a jury, at the 1961 January term of the Court of Common Pleas for Spartanburg County. During the trial of the case both parties agreed that the Court should interpret the aforesaid agreement in accordance with the facts and the law applicable thereto. Thereupon, the jury was excused and the case was tried before the Judge without a jury. The trial Judge, on August 29, 1961, passed an order in which he held that the respondents had the authority, under the agreement heretofore referred to, to charge the appellants a water rate of 12½¢ per thousand gallons or the rate charged all consumers of the same class.

The appellants are before this Court upon exceptions to the order of the trial Judge. By these exceptions, two ques-

tions are raised: (1) Was the agreement between the Water District and the Commissioners of Public Works of the City of Spartanburg ambiguous and, if so, did the Court below erroneously exclude evidence showing the facts and circumstances surrounding the execution of the contract? (2) Does the agreement between the Water District and the Commissioners of Public Works of the City of Spartanburg put a ceiling of 10¢ per thousand gallons on the water rate which can be charged the Water District?

The trial Judge held that the agreement between the appellants and the respondents was unambiguous. The appellants assert this to be error. An ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning. *Whiting Stoker Co. v. Chicago Stoker Corp.*, 7 Cir., 171 F. (2d) 248. Where a written instrument is ambiguous parol testimony is admissible to show its true meaning. *Breedin v. Smith et al.*, 126 S. C. 346, 120 S. E. 64; *DeVore v. Piedmont Ins. Co.*, 144 S. C. 417, 142 S. E. 593. Where the language of a contract is free from ambiguity its construction is for the Court. *Charleston & W. C. Rwy. Co. v. Joyce*, 231 S. C. 493, 99 S. E. (2d) 187. Where the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements of any of the parties to it, made contemporaneously with or prior to its execution, is inadmissible to contradict, add to, subtract from, vary or explain its terms, in the absence of fraud, accident or mistake in its procurement. *Chapman v. Metropolitan Life Ins. Co.*, 172 S. C. 250, 173 S. E. 801; *Rhame v. National Grange Mutual Ins. Co.*, 238 S. C. 539, 121 S. E. (2d) 94. We should point out that the appellants make no claim of any fraud, accident or mistake in the making of the contract.

Having reviewed the contract between the parties to this action and particularly paragraph 3 thereof, we agree that such is unambiguous. The construction of the unambiguous written contract was, therefore, a matter for the trial Judge.

Contracts, where there is no ambiguity, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. *Inman et al. v. Life Ins. Co. of Virginia,* 223 S. C. 98, 74 S. E. (2d) 423. It is axiomatic that the intent and purport of a written contract or agreement has to be gathered from the contents of the entire agreement and not from any particular clause or provision thereof. The parties have the right to make their own contracts, and when such contracts are capable of clear interpretation, the Court's province is confined to the enforcement thereof. The Court cannot exercise its discretion as to the content of such contract or substitute its own construction for the agreement clearly entered into between the parties. *Sloan v. Colonial Life & Accident Ins. Co.,* 222 S. C. 248, 72 S. E. (2d) 446. The purpose of all rules of construction is to ascertain the intention of the parties to the contract. The subject matter of the contract and the purpose of its exception are material to the ascertainment of the intention of the parties and the meaning of the terms they use. In construing the contract the Court will ascertain the intention of the parties, and to that end will, as far as possible, determine the situation of the parties, as well as the purposes had in view at the time the contract was made. All contracts should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results. *Three States Coal Co. v. Mollohon Mfg. Co.,* 137 S. C. 345, 135 S. E. 380. The purpose of the agreement between the Water District and the Commissioners of Public Works of the City of Spartanburg was to enable the District to obtain an adequate supply of water for its water distribution system. The necessity for obtaining such adequate water supply was brought about because the District's own water supply was inadequate. The District was given statutory authority to enter into a contract for the purchase of water at wholesale. After negotiations between the parties to this action, the contract heretofore referred to was duly made. At the time of the

making of the contract, it was agreed that the District would pay to the respondents 10¢ per thousand gallons of water or the published rate, whichever was lower. If the foregoing provision was all that was contained in the contract pertaining to water rates, then the position of the appellants would be sound. However, we must consider all of the language used by the parties in order to arrive at a proper construction and interpretation of the agreement. It was further agreed that the contract was made subject to the rules and regulations of the Commission and that "the water rates above referred to shall at all times be subject to any change made by the Commission affecting all consumers of the same class."

The position of the appellants is that the agreement between the parties to this action put a ceiling of 10¢ per thousand gallons on the water rate which could be charged the District. The trial Judge, in refusing to so hold, held that he must ascertain the intention of the parties from the whole instrument and effect should be given, if practicable, to every clause and word in it. He further held that he should give such a construction to the contract as would not lead to absurd consequences or unjust results. He found:

"Applying the foregoing law to the case at hand this Court finds that the plaintiffs' interpretation of the agreement must be denied as being a very unfair and unreasonable construction and interpretation thereof. It would most certainly bring about a very inequitable result to the defendants. It would result in the plaintiffs obtaining an unfair and unreasonable advantage over the defendants and one which was never intended by the parties hereto. In our constantly changing and inflated economy which affects all types of businesses, including the water works system of the City of Spartanburg, it would be most difficult, if not impossible for this Court to conceive of duly elected public servants tying their hands with a set water rate for a period of thirty years to the detriment of the citizens of the City of Spartanburg for whom the water works was originally created."

He concluded:

"It necessarily follows that the only reasonable construction which the Court can place on this entire agreement and contract is that the defendants have the authority under the terms of the contract to charge the plaintiffs the same water rates that it charges other consumers of the same class, which rates, of course, are subject to any increase or decrease affecting all consumers of the same class. It is the Court's opinion that this construction carries out the intention of the parties; is in accord with the purposes of the parties to the contract; is fair and is a sensible and reasonable construction and such as would not lead to absurd consequences or unjust results."

The provision in paragraph 3 that "the water rates above referred to shall at all times be subject to any change made by the Commission affecting all consumers of the same class" is known in law as an "escalator clause". The Courts have recognized the necessity for such a clause because of the sharply inflationary and changing economic conditions prevailing in this country for the past several years. As a means of coping with such changing economic conditions, with resultant price variations, many contracts fix a base price but contain a provision whereby the seller may raise such price. The necessity for this type clause was brought about because of long term contracts when the parties thereto could not anticipate all price factors which might occur during the existence of the said contract. Attention is direced to an annotation in 63 A. L. R. (2d) 1337, which deals with "escalator" price adjustment clauses. In the case of *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N. Y. (2d) 456, 161 N. Y. S. (2d) 90, 141 N. E. (2d) 590, 63 A. L. R. (2d) 1331, it was held that an escalator clause, giving the producer of building materials the right to increase the price under the contract if it changed its prices generally, did not render the contract invalid for lack of mutuality, the Court noting that the increases or decreases must be in accordance with the changes of the producer's regular prices to

all purchasers of its product. We quote from the opinion in such case, the following:

"* * * In other words, appellants are saying that the contract lacks requisite mutuality and that an escalation clause, in order to be valid, must be based on some extrinsic standard by which escalation can be determined. However, this escalation clause provided for increases or decreases in accordance with changes in Bethlehem's regular prices to all purchasers of plain steel products and such a provision does not give Bethlehem undue power of determination of the contract price * * *."

The provision in paragraph 3 of the contract here under consideration gave to the respondents the right to revise the water rates in the event of a general rate change to all consumers of the same class. This right to make a price adjustment was a contractual one and did not conflict with the provision governing the basic rate charged for water at the time of the execution of the contract.

We should point out that the record shows that the increase applied to the appellants was the same as was applied to all consumers of the same class. It should also be noted that the appellants make no contention that the rate charged by the respondents was arbitrary or unreasonable.

We conclude that the trial Judge correctly construed and interpreted paragraph three of the contract here under consideration. His construction appears to us to carry out the intention and to be in accordance with the purposes of the parties to the contract as is evidenced by an examination of the entire agreement. It seems to us that if the parties had intended to place a ceiling of 10¢ per thousand gallons as water rate to be charged the District, an agreement clearly expressing this purpose could and would have been executed.

The conclusions that we have reached do not require us to determine the question of whether the trial Judge committed error in settling the case on appeal by granting amendments proposed by the respondents.

The exceptions of the appellants are overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

TAYLOR, Chief Justice (concurring).

I see no question of ambiguity presented in the record before us. After taking considerable testimony, the Court made the following inquiry: "What question am I going to have this jury pass on, in interpreting this contract?" After a short discussion, counsel for Appellants stated:

"Your Honor, so far as we are concerned, we will submit the whole thing to you.

'The Court: As a matter of law?"

Counsel: "Yes, sir."

"The Court: And let me decide the facts and the law?"

Counsel: "The whole thing. We will do that, too."

Further testimony was taken with the statement by the Court that it would rule later whether "I think it is a question of law or of fact." Thereafter, when Respondents moved for a nonsuit, the Court stated: "Let the record show I have overruled the motion for a nonsuit, and that the Court agrees with counsel for the defendant that there is no question of fact presented here by the plaintiff, and the Court agrees with counsel for the plaintiff that there is no question of fact presented by the plaintiff, and it is entirely a question of law for the Court, and the Court in its discretion, is permitting the defendant to put up such witnesses to testify to such relevant facts as it may deem proper. Is that what you want?" The jury was then dismissed; and in his Order, the Trial Judge made the following statement which is not questioned: "All the parties contend that the agreement being sued on is free from ambiguity * * *."

The case was heard with all parties contending that the contract under consideration was unambiguous. It therefore

became the duty of the Court to, as it did, construe the contract without regard to the extrinsic evidence presented.

Appellants now contend on appeal that the contract is ambiguous and seek to have the case remanded to the Circuit Court for the purpose of introducing certain extrinsic evidence which would be admissible only in case of ambiguity, as in instant case, there is no contention of fraud, accident, or mistake in the procurement of the contract.

In an action at law, tried by the Judge without a jury, the Judge's findings have the same force and effect as the verdict of a jury, and unless the Judge committed some error of law leading him to an erroneous conclusion, or the evidence is reasonably susceptible of the opposite conclusion only, his findings must be accepted by the reviewing Court. *Robinson v. Carolina Casualty Insurance Company*, 232 S. C. 268, 101 S. E. (2d) 664.

It is not contended that the evidence is reasonably susceptible of the opposite conclusion only to that reached by the hearing Judge, and I therefore concur in the Opinion of Justice Moss.

Moss and LEWIS, JJ., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting).

I find myself unable to agree with the result of the majority opinion in this case. It is my considered opinion that the judgment of the lower court should be reversed and the cause remanded for a new trial.

The majority opinion, as well as the decision of the lower court, is based on the premise that there is no ambiguity in the contract between the parties. Considering the contract as a whole, it appears to me that there is a very obvious ambiguity in paragraph 3 thereof, which ambiguity gave rise to this action.

The first portion of paragraph 3 is as follows:

"The District agrees to pay the Commission for water at monthly intervals. The rate shall be 10¢ per thousand gallons or the published rate, whichever may be lower. The Commission's published rates are hereto attached and made a part of this Agreement."

Up to this point it is crystal clear that the foregoing language, in the light of the other paragraphs of the contract, established a ceiling of ten cents per thousand gallons for a period of thirty years, with a lower rate to be paid if the volume purchased by the District should entitle the District to a lower price under the published rates.

The language of paragraph 3, above quoted, is in accordance with the letter in evidence from Mr. R. B. Simms, Superintendent of the Spartanburg Water Works, to the attorney who prepared the contract, wherein Mr. Simms said, "As to the rate per million gallons, I would suggest that you make the contract one hundred dollars ($100.00) per million gallons or the published rate for the Inman-Campobello District depending on the cheaper rate."

The ambiguity arose when there was added to the contract, also at the request or suggestion of Mr. Simms, the last sentence of paragraph 3, which reads as follows:

"It is further agreed that this contract is made subject to the rules and regulations of the Commission, and such rules and regulations and the water rates above referred to shall at all times be subject to any change made by the Commission affecting all consumers of the same class."

This last quoted sentence is, in my opinion, susceptible of more than one interpretation when the contract is considered in its entirety, and raises a serious question as to what was the intention of the parties. The respondents contend the last sentence gives them the right to raise the contract or ceiling price set forth in the second sentence, as well as its published rates. While the language is susceptible of this construction, such construction would emasculate from the second sentence the words, "whichever may be lower". The language

of the last sentence, on the other hand, is clearly susceptible of the construction contended for by the appellants, which is that the Commission reserved the right to raise its published rates to consumers but not the contract or ceiling price, which construction is entirely logical when the contract is viewed in its entirety.

Strongly supporting the contention of the appellants as to the construction of the contract is the meaning of the word "consumer", which word, as far as I know, has never been heretofore defined by this court. Numerous courts, however, have had occasion to define the same. A comprehensive definition of the term is as follows:

"Consumer is one who uses economic goods and so diminishes or destroys their utilities; opposed to producer; and 'consume' means to use up, expend, waste, devour, with synonyms of destroy, swallow up, engulf, absorb, waste, exhaust, spend, expend, squander, lavish, dissipate, burn up."

See *Ex part Mehlman,* 127 Tex. Cr. R. 257, 75 S. W. (2d) 689; *Union Portland Cement Co. v. State Tax Commission,* 110 Utah 135, 170 P. (2d) 164; *St. Paul & Tacoma Lumber Co. v. State,* 40 Wash. (2d) 347, 243 P. (2d) 474.

The "consumer" is the last person to whom property passes in the course of ownership and such is the test of a retail transaction. *Paramount-Richards Theatres v. State,* 256 Ala. 515, 55 So. (2d) 812.

Under a contract to furnish electrical power to a distributing company, the distributing company was held not to be a consumer in the case of *Ohio Gas, Light & Coke Co. v. Lake Shore Power Co.,* Ohio, 3 Ohio Law Abst. 120.

According to the weight of authority from other jurisdictions, the appellant District here is not a "consumer" in either the ordinary or legal sense of the word. The published rates of the Commission deal with rates to consumers and make no reference whatsoever to prices or rates to contract purchasers at wholesale for the purpose of distribution.

Therefore, when the contract language is "water rates above referred to shall at all times be subject to any change made by the Commission affecting all consumers of the same class", such language is clearly susceptible of the interpretation that the parties in using the words "water rates above referred to" had in mind only the published rates referred to in the third sentence of paragraph 3, the published rates being the only rates mentioned which affected the consumers of the same class or any class. It was only natural that the Commission would wish to reserve the right to change its published consumer rates to avoid any contention on the part of the District during the thirty year period of the contract that the published rates to consumers, attached to and made a part of the contract, were binding throughout the thirty year period.

Stated another way, according to the contention of the appellants when the last sentence of paragraph 3 was added to the contract the Commission was simply saying to the District, "We reserve the right to change our published rates to consumers throughout the period of the contract. Should we raise our published rates to consumers, such raise might result in you, the District, never having the benefit of a price lower than 10¢ per thousand gallons, regardless of the volume of water purchased by you. Of course, should we decide to lower our published rates to consumers, you, the District, will get the benefit thereof." The construction placed upon the language by the appellants gives meaning and effect to all of the words and phrases in paragraph 3, whereas the construction contended for by the respondents has the effect of emasculating portions of paragraph 3.

The majority opinion, after arriving at what I think is an erroneous conclusion that the contract is unambiguous, proceeds to construe the contract and in doing so overlooks what I consider to be very material parts of the contract. The opinion proceeds on the premise that the only purpose of the contract was to provide the District with an adequate supply of water. This was, of course, one purpose, but far from

the only purpose. The contract sets forth in detail among its purposes that the City of Spartanburg through its Commissioners of Public Works had a supply of good water available in excess of its requirements, and that the Commission had determined, as a fact, that it would greatly benefit the City of Spartanburg to make such excess water available to the District on reasonable terms and conditions.

Paragraph 5 of the contract shows a purpose to tie the contract to the bonded indebtedness incurred by the District for a period of thirty years, that being the period of time required for repayment of the bonded indebtedness. No other reason for making reference to the bonded indebtedness in the contract is readily apparent. In this connection, if the District entered into a contract with the Commission for a thirty year period without some firm limitation upon the cost of the water, such would, in effect, vest in the Commission power to force taxes to be raised in the District in order to pay the bonded indebtedness incurred by the District. Was such the intention of the parties?

Paragraphs 1 and 2 of the contract show a purpose on the part of the Commission to limit the amount of water which it would ever be required, during the thirty year period, to furnish the District at a firm contract or ceiling price, the District being allowed to make only one connection, the expense being paid by the District, and the amount of water being limited to the capacity of the main transmission line flowing under gravity pressures at the meter or point of connection.

The circuit judge held, his holding being quoted with approval in the majority opinion, that the appellants' interpretation of the agreement must be denied as being a very unreasonable and unfair construction and interpretation thereof, and that it would most certainly bring about a most inequitable result to the defendants. The majority opinion makes the statement. "The record shows that the increase applied to appellants was the same as applied to all consumers of the same class."

The holding by the lower court and the quoted statement in the majority opinion are discussed together because they largely involve the same facts. In my view, neither of them is supported by the contract or the record, which brings us to a consideration of certain pertinent facts disclosed by the record. To begin with, there is an absence of any evidence tending to show that the construction of the contract contended for by the appellants would bring about a very inequitable result as to respondents.

It is undisputed that at the time of the contract and at the time of the raise in rates, the District here involved was the only district purchasing water from the Commission at wholesale for resale through its own distribution system.

The witness Mills, Secretary-Treasurer of the Commission, testified that the District was under the "special contract class" and Mr. Simms, Superintendent of the Commission, referred to the District as being on the "industrial rate". Neither the published rates of the Commission, attached to and made a part of the contract, nor the rate sheet published as being effective May 1, 1957, make any reference whatsoever to a special contract class, an industrial rate or a district purchasing water at wholesale for retail sale.

In fairness to the view of the majority, it should be noted that the statement of the case contains the following language:

"On or about June 1, 1957, the Commissioners of Public Works of the City of Spartanburg raised the rate for all customers of the same class as Inman-Campobello Water District to 12½ ¢ per thousand gallons, * * *"

The appendix reflects that such was inserted therein by order of the circuit judge settling the case on appeal, moreover, the quoted language does not reflect the fact that the said District was the only customer of that class. I see no other basis in the record for the statement that "the increase applied to appellants was the same applied to all consumers of the same class." The rate of increase was the same as was applied to retail consumers, in the City of Spartanburg,

but I think the District, while a customer, was not a consumer and certainly not a retail consumer.

Upon the record before us, I conclude that rather than inequity resulting to the City of Spartanburg from a decision favorable to the appellants, it is most likely that an inequitable result to the appellants will follow the affirmance of the lower court decision.

With due respect to the concurring opinion of Mr. Chief Justice Taylor, I do not think that the quoted colloquy between counsel and the court amounted to a concession on the part of counsel for appellant that there was no ambiguity in the contract. The entire record and the appeal, to my mind, negative such a concession.

Although in his order deciding the case the circuit judge did make the statement: "All the parties contend that the agreement being sued on is free from ambiguity * * *", in his order settling the case on appeal, also appealed from, the circuit judge said, "It was the court's opinion that the contract was free from ambiguity, however, I could not state that the attorneys for appellants agreed to this."

Of course, if the circuit judge had considered all of the evidence and made factual findings therefrom, his findings would have had the same force and effect as the verdict of a jury. This, however, the circuit judge did not do. He regarded the contract throughout as being free from ambiguity; found it unnecessary to consider the evidence, and, moreover, in arriving at his construction of the contract relied upon certain rules of construction which are normally resorted to only in aid of construction of ambiguous, rather than unambiguous, contracts.

For the reasons hereinabove stated, it is my conclusion that the decision of the lower court should be reversed and the cause remanded for a new trial with the parties being allowed to offer all admissible, relevant evidence which would tend to prove the true and real intent of the parties in the execution of this ambiguous contract.

BRAILSFORD, J., concurs in result.