## Richmond

AMERICAN TRADING AND PRODUCTION CORPORATION, A FOREIGN CORPORATION, AND WOODLAKE TOWERS, INC., A FOREIGN CORPORATION v. FAIRFAX COUNTY BOARD OF SUPERVISORS, NAMELY, WILLIAM S. HOOFNAGLE, JOSEPH ALEXANDER, HARRIET F. BRADLEY, HERBERT E. HARRIS, II, CHARLES MAJER, VIRGINIA E. MCENEARNEY, HAROLD O. MILLER, MARTHA V. PENNINO, THOMAS B. WRIGHT; COUNTY OF FAIRFAX; AND GEORGE J. KELLEY, JR., ACTING DIRECTOR OF PUBLIC WORKS, COUNTY OF FAIRFAX.

November 26, 1973.

Record No. 8177.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

*Stephen L. Best* (*McCandlish, Lillard & Marsh*, on brief), for appellants.

*Frederic Lee Ruck, County Attorney for the County of Fairfax* (*M. Langhorne Keith, former County Attorney for the County of Fairfax*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

American Trading and Production Corporation and its wholly owned subsidiary, Woodlake Towers, Inc. (collectively, the Owners), appeal from a final decree entered June 2, 1972 in a declaratory

judgment proceeding determining that they are required to pay sewer service availability charges to Fairfax County.

The Owners own a tract of land on the south side of U. S. Route 50 comprising approximately 32 acres in Fairfax County and 5.7 acres in Arlington County. On that portion of the land lying in Fairfax County the Owners, at the time of the hearing in the trial court, had completed one high-rise apartment building, were constructing a second, and were planning to erect a third. Because of topographical conditions which made the Fairfax County sewerage system relatively inaccessible, the Owners, as permitted by a 1952 agreement between Fairfax and Arlington Counties and with the approval of both counties, built at their expense a sewer line across their land in Fairfax County into Arlington County to connect their first apartment building with the Four Mile Run Trunk Sewer of Arlington County. As required, the Owners conveyed to Fairfax County all sewer lines constructed on their property in that county.

On December 31, 1968, as the first building was nearing completion, the Owners filed with the Fairfax County Department of Public Works an "APPLICATION FOR SEWERAGE SERVICE REQUIRING AN EXTENSION OF EXISTING SEWERAGE FACILITIES," which was approved on April 29, 1969. The application provides in pertinent part as follows:

"Application is hereby made for permission to connect with and extend the presently existing sewerage facilities of the County of Fairfax for the purpose of providing sewerage service for the following described property:

"Woodlake Towers and adjacent properties
"In consideration of such permission and as a condition thereof, the Applicant agrees as follows:

\* \* \* \*

"8. That all applicable charges set by the Board of Supervisors by resolution or ordinance in connection with the rendering of sewerage service to the above described property will be paid by him when and as due, . . . ."

Fairfax County imposes three different sewer charges—availability charges, connection charges, and quarterly use charges. Fairfax Coun-

ty Code Sec. 22-22 *et seq.* The connection charge is a one-time charge which is required when the County at its expense extends its sewer system on the applicant's behalf. As the Owners had constructed their own lines they were not required to pay this charge. The quarterly use charge is a periodic charge imposed on all persons who use the County's sewerage facilities, and its applicability is not challenged by the Owners. So our concern is solely with the availability charge, a one-time charge based upon availability of County sewerage facilities.

When the County demanded payment of the availability charge for the first building, the Owners denied liability. In the ensuing litigation the Owners prevailed upon appeal. *American Trading* v. *Fairfax County*, 212 Va. 274, 183 S.E.2d 720 (1971). We there held that Fairfax County Code Sec. 22-23, which established the availability charge for "the use of the comprehensive county integrated sewerage system," did not then apply to the Owners because, assuming that the sewer line which they constructed in Fairfax County was a County facility, it was connected to the Arlington County integrated sewerage system rather than to the Fairfax County integrated sewerage system.

On December 23, 1970, subsequent to the trial in the first case but before the appeal was heard, the County amended Sections 22-1, 22-22 and 22-23 of Chapter 22, Sewers and Sewage Disposal, of its Code. As amended Section 22-23 contains no reference to the Fairfax County integrated sewerage system but imposes charges "for the availability of trunk sewer, treatment and disposal facilities."

Section 22-22, as amended, requires "[a]ny person who shall have connected or who shall hereafter connect the sewerage facilities of any premises to the facilities of the County" to pay "for the availability of, connection to and/or use of said facilities."

Section 22-1, as amended, defines facilities of the County as follows:

"Any sewer, pipe, manhole, pumping station or other appurtenance of the sewerage collection, transmission or treatment works or system, whether located within or without the boundaries of the county, which have been, are, or are intended to be installed, operated or maintained by the county, or in the installation, operation, or maintenance of which the county has, is, or is intended to participate financially."

To serve their second building the Owners constructed across their Fairfax County property a new sewer line which connected in Arling-

ton County with the line carrying sewerage from their first building to the Four Mile Run Trunk Sewer. Title to all lines in Fairfax County having vested in the County these portions of the lines are subject to County maintenance and modification. In addition, as the trial court found, pursuant to the 1952 agreement between Arlington and Fairfax Counties, Fairfax County is obligated to pay for the use of the Arlington County lines to the extent they are used by residents of Fairfax County.

The trial court found that the 1970 amendments to Sections 22-1, 22-22 and 22-23 of the Fairfax County Code required the Owners to pay availability charges for their second apartment building and that the Owners and Fairfax County were not contractually bound by the provisions of those code sections in effect prior to amendment. The court also found that the Owners "are not being treated any differently than other users of the county system which connects to and uses the system of adjacent jurisdiction, such as Arlington, Alexandria and the District of Columbia."

Unquestionably the ordinance, as amended, imposes availability charges upon property owners in Fairfax County who connect their sewerage facilities to trunk lines in surrounding jurisdictions. The Owners contend, however, that the County's acceptance of the Application for Sewerage Service created a contract by which the County promised to impose only the kinds of charges applicable as of the effective date of the Application. They assert that the imposition of availability charges for the second building would therefore violate constitutional guarantees against impairment of contracts under Article I, Section 10 of the United States Constitution. We do not agree.

The Owners, by letter dated April 3, 1969, had applied for sewerage service for "Woodlake Towers Apartments Building No. 1", had requested issuance of plumbing permits therefor without payment of availability charges and had agreed "to pay any proper availability charges prior to the time of connection to the County's comprehensive sewer system." We construe this commitment by the Owners as limited to the first building and, of course, the Owners were relieved of any obligation to pay availability charges for that building because they never connected to the County's comprehensive integrated sewerage system.

The Application of December 31, 1968, however, does apply to the second building. We agree with the Owners that the words "Woodlake Towers and adjacent properties" included the additional

buildings proposed to be erected as well as the first building. Indeed, the record reveals that a presite plan filed with the County showed all three buildings although the site plan for only the first building had been approved when the controversy on availability charges arose. But the Application required the Owners to pay "all applicable charges" imposed by the County "in connection with the rendering of sewerage service." In the absence of language in the Application limiting "applicable charges" to charges in effect when the Application was filed or approved we will not so construe these words.

The County could reasonably impose on the Owners increases in its sewer use charges or changes in its rate structure after the effective date of the Application, provided such increases or changes were uniformly applied. *See Bruce* v. *Blalock*, 241 S.C. 155, 127 S.E.2d 439 (1962). The County could in like manner impose new charges that would affect the Owners and others similarly situated. It would be unreasonable to infer that the County intended to bind itself unalterably in advance to sewer charges for future construction which might not be completed, or even commenced, for many years.

The record shows that availability charges were payable in full at or prior to connection of the premises to the County's facilities and that it was customary for the County to collect such charges prior to issuance of plumbing permits. We hold that the Owners, by promising to pay "all applicable charges", agreed to pay whatever availability charges are imposed by ordinance at the time each building is connected with the County facilities.

The County is entitled to enforce this promise. Such open price provisions are enforcible in sales contracts, provided the party that is to set the price does not have the power to act arbitrarily. *See Bethlehem Steel Company* v. *Turner Construction Co.*, 2 N.Y.2d 456, 141 N.E.2d 590 (1957); *California Lettuce Growers* v. *Union Sugar Co.*, 45 Cal.2d 474, 289 P.2d 785 (1955); Restatement (Second) of Contracts § 32, comment *e* (Tent. Drafts Nos. 1-7, 1973); 1 Corbin, Law of Contracts § 98 (1950). *See also* § 8.2-305 of the Code of Virginia, 1950, as amended, which validates such provisions in contracts for the sale of goods. We conclude that the County, under the terms of the Application, has the power to set the price for sewer services, subject to the implied conditions, which have been met, that it act reasonably and treat alike all consumers similarly situated.

As the trial court correctly ruled that the availability charges are applicable to the Owners for their second building and that the amend-

ments to the Fairfax County Code incident thereto do not impair any contractual obligations between the parties the final decree appealed from will be affirmed.

*Affirmed.*