1259

A. Dale GILLILAND, Respondent v. ELMWOOD PROPERTIES, a South Carolina general partnership, Robert A. Causey, Woodie R. Smith, Charles M. Mulherin and Allen P. Howell, individually and as partners of Elmwood Properties, a South Carolina general partnership, Appellants.

(375 S. E. (2d) 342)

Court of Appeals

*G. Trenholm Walker* of *Wise & Cole, P.A.*, Charleston, *for appellants.*

*Judson F. Ayers* of *Ayers & Anderson*, Greenwood, *for respondent.*

Heard Oct. 19, 1988.

Decided Nov. 28, 1988.

LITTLEJOHN, Judge:

Respondent, A. Dale Gilliland, brought this contract action against appellants, Elmwood Properties and Robert A. Causey, Woodie R. Smith, Charles M. Mulherin and Allen P. Howell, individually and as partners of Elmwood Properties (hereinafter collectively Elmwood). Elmwood answered and counterclaimed. From an order granting Gilliland's motion for partial summary judgment and denying Elmwood's motion for summary judgment, Elmwood appeals. We affirm.

Gilliland, an architect, sued Elmwood, a client, alleging payment was due from services rendered under two contracts between the parties. Elmwood answered and counterclaimed, admitting the existence of the contracts, but denying payment was due. Elmwood set forth several defenses including failure of a condition precedent, breach of the contracts by Gilliland and negligent performance of the

contracts by Gilliland. Individual partners Causey and Smith asserted as an additional defense that they withdrew as partners prior to the initiation of this action and therefore were not liable under a provision contained in the contracts.

Elmwood first contends the trial judge erred in finding the contracts unambiguously lacked a condition precedent to payment. The pertinent portion of the contracts is Article 15.1, a handwritten provision which reads as follows:

> Payment to the architect shall be made by the owner at loan closing (project loan closing) upon invoice by the architect. If project is approved and not closed by the owner after the completion of architectural and engineering contract documents (plans and specifications) moneys due the architect will be payable by the project owners individually or collectively within 30 days after invoice by the architect, as each partner's interest appear in their agreement.

The trial judge found, while the first sentence of this provision read alone appears to establish a condition precedent, the provision read in its entirety and in conjunction with the entire contract provides a different interpretation. He found the clear intent of the parties was to establish time and source of payments.

Elmwood argues this provision meant Elmwood would be liable to Gilliland only if the *project loan* were approved, regardless of closing. We disagree. The provision states the moneys will be due if the "project" is approved and not closed, not the *project loan*. The parties are all experienced businessmen and real estate developers and had they intended this meaning, certainly they would have used the phrase "project loan" or even simply the word "loan" and not the word "project." Project is the key word in the contracts. It appears some sixty-five times throughout each contract, each time having the same meaning. It is clearly defined in the contract.

Similarly, an examination of the contract reveals numerous instances that speak of "approval by the owner." Article 1.1.4 speaks of "approval by the owner" of the schematic

design documents. Article 1.2.1 speaks of "approval by the owner" of the design development documents. Article 1.3.1 speaks of "approval by the owner [of] drawings and specifications setting forth in detail the requirements for the construction of the project," i.e. the plans and specifications designated in 15.1. "If the project is approved and not closed by the owner" clearly means, and in fact says, if the project is approved by the owner and relates back to Article 1.3.1, the owner is the only one who could approve the project.

It is clear that Article 15.1 tracks the language of the rest of the contract and uses the terminology common throughout the contracts. It stretches the rule of construction to say that the parties intended the same terms to mean one thing in every other part of the contract and something entirely different when used in Article 15.1 as indicated by the dissent. In determining the intent and purpose of a contract, a court should not look solely to one clause read in isolation from the rest of the document; rather it should consider the contents of the whole instrument. Where an action presents the question as to construction of written contract and language of contract is clear and unambiguous, it is a question of law. *J.T.M. Co., Inc. v. Vane*, 283 S. C. 512, 323 S. E. (2d) 794, 796 (Ct. App. 1984). Parties to a contract have a right to make their contracts, and when the contracts they make are capable of clear interpretation, the court's province is confined to the enforcement of the contract as written; the court cannot exercise its discretion as to the contents of the contract or substitute its own construction for an agreement clearly entered into between the parties. *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439 (1962). In ascertaining the intention of the parties, the court must first look to the language of the contract. *Blakeley v. Rabon*, 266 S. C. 68, 221 S. E. (2d) 767 (1976). And if the language of the contract is clear and capable of legal construction, the language alone determines the form and effect of the instrument. *Superior Automobile Insurance Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973). We hold the trial judge was correct in finding the language was clear and unambiguous and simply provided for alternative sources of payment, i.e. loan proceeds or individual owners.

Elmwood further contends the trial judge erred in ■ finding each partner's individual liability was determined as his interest appeared at the time the architectural and engineering documents were completed under Article 15.1. Elmwood argues the language of article 15.1 gives rise to liability of the partners individually or collectively when the project is approved and not closed. It is true the partners' individual liability does not arise *unless* the project is approved and not closed. At this point, liability arises *when* architectural and engineering documents are completed. In other words, while project approval and failure to close are a condition precedent to the individual and collective liabilities of the partners, it is the completion of the documents at this point which triggers liability.

Elmwood further contends the trial judge erred in ■ ruling certain evidence as to extrinsic representations and agreements by Gilliland was inadmissible under the parol evidence rule. Elmwood alleged Gilliland breached the contracts by failing to design a project which would qualify for tax exempt bond funding, failing to observe the project's budgetary constraints, failing to design a project feasible for conventional financing and failing to obtain necessary municipal and governmental agency approvals for construction of the project. The trial judge noted there were no express provisions in the contracts establishing such obligations on the part of Gilliland. Elmwood contends Gilliland made these representations to induce Elmwood to enter into the agreements.

When an agreement is reduced to writing, the implication is strong that the whole intention of the parties has been expressed. *Palmetto State Savings Bank of S. C. v. Barr*, 293 S. C. 252, 359 S. E. (2d) 531 (Ct. App. 1987). When such an agreement is clear and complete, extrinsic evidence of agreements or understandings contemperaneous with or prior to execution of a written instrument cannot be used to contradict, explain, or vary its terms. *Iseman v. Hobbs*, 290 S. C. 482, 351 S. E. (2d) 351 (Ct. App. 1986). Elmwood argues the contracts are not clear and complete. We disagree. Our reading of the contracts shows clear and complete agreements between the parties. We further note these contracts contain integration clauses. (*U. S. Leasing Corp. v. Janicare*,

*Inc.*, 294 S. C. 312, 364 S. E. (2d) 202 (Ct. App. 1988). The parol evidence rule is particularly applicable where the writing in question has an integration clause.)

Finally, Elmwood claims the trial judge erred in granting Gilliland's motion for summary judgment on Elmwood's defenses and counterclaim based on Gilliland's negligence. The allegations of negligence by Elmwood are essentially the same as the allegation of breach of the contracts on Gilliland's part.

> Ordinarily, there is no duty except as the contract creates and the remedy is for breach of contract, however, when the breach of duty arises out of liability independently of the personal obligation undertaken by contract, it is a tort. *Caldwell v. Jim Walter Homes, Inc.*, 293 S. C. 229, 359 S. E. (2d) 518 (Ct. App. 1987). For a tort to arise out of a contract, there must also exist a relationship, irrespective of the contract, that give rise to a duty. Mere breach of a contract is not actionable as a tort. *Troutman v. Facetglas, Inc.*, 281 S. C. 598, 316 S. E. (2d) 424 (Ct. App. 1984). In the instant case, there exists no duty or relationship independent of the contract.

Accordingly, the order of the trial court is affirmed.

Affirmed.

SHAW, J., concurs.

CURETON, J., dissents in separate opinion.

CURETON, Judge (dissenting):

This case involves the interpretation of provisions of two contracts. At the heart of the controversy is a handwritten paragraph in each contract designated as "Section 15.1 *Payments to the Architect.*" The owners contend their obligation to pay the architect is contingent upon the projects obtaining loan funding.

The two contracts are copies of the American Institute of Architects "Standard Form of Agreement Between Owner and Architect." Section 15.1 has been added by the parties. The addition of this section creates an ambiguity in the contracts. The printed provisions of the AIA contracts refer in various sections to owner approval of certain design docu-

ments. Section 1.1.4 refers to owner approval of schematic design documents and Section 1.2.1 refers to design development documents. Section 1.3.1 discusses owner approval of construction documents. These printed sections clearly refer to owner approval of various stages of documents prepared by the architect. However, handwritten Section 15.1 is not so clear. Reading the section as a whole with all reasonable inferences resolved in favor of the owners leads to the interpretation that the phrase "if the project is approved and not closed" refers to approval of the project for loan funding, and not approval by the owner. This is a reasonable construction of the section since the first sentence specifically refers to the loan closing.

The majority's interpretation of the handwritten language of Article 15.1 as referring simply to approval of the plans by the owners ignores the realities of a project of the sort here involved where the approval (not the least of which is funding) by persons and entities other than the owners determines the viability of a project. Rhetorically, the question must be asked: did not the owners approve the project, at least in principle, even before the architect was employed to prepare the plans? Moreover, would not a final decision by the owners to go forward with the project be contingent upon assurances that the project would be funded? Clearly, if the parties intended "project approval" to mean approval of only the plans by the owner, they could have so provided. Instead it seems logical and reasonable to me the parties intended to pay the architect from closing proceeds; but provided that in the event the project was approved (to include funding) and the owners chose not to close (which obviously refers to the loan) the owners would nevertheless be responsible for paying the architect from their personal funds.

I would find the contract ambiguous on the question of the intent of the parties regarding when the architect received compensation. I would reverse the award of partial summary judgment to the architect and remand to the trial court.