1418

POPOCAR ENTERPRISES, A Limited Partnership, By and Through FI-NANCIAL MANAGEMENT CORPORATION, its general partner, Appellant. v. Philip A. McGOWAN, Individually and d/b/a Coleman Boulevard Associates, A Partnership, Respondent.

(386 S. E. (2d) 795)

Court of Appeals

*George J. Morris*, Charleston, *for appellant.*

*Claron A. Robertson, III*, Charleston, *for respondent.*

Heard Oct. 18, 1989.

Decided Nov. 3, 1989.

SHAW, Judge:

Appellant, Popocar Enterprises, sought a permanent injunction to bar respondent, Philip A. McGowan, from leasing a shopping center space to a competitor. Following a hearing on the merits, the trial judge denied the injunction. Popocar appeals. We affirm.

In 1986, McGowan was a partner in the general partnership, Northcut Associates. On February 11 of that year, Northcutt Associates entered into a lease agreement with Tomark, Inc. which provided for lease of a space in Northcutt Plaza's shopping center to Tomark, Inc. for operation of a frozen dessert store. At the time of entering the lease, Northcutt Plaza consisted of a single grouping of continuous retail stores, situated on a parcel of land owned by Northcutt Associates and referred to as "Phase I."

Popocar, which became the assignee of the lease in March 1987, operates a frozen yogurt store in the leased space. At the time of the assignment, McGowan had acquired all of the interest in Northcutt Associates.

On February 14, 1986, another partnership, Coleman Boulevard Associates, acquired a tract of land adjacent to the property on which Popocar leases space. This property was later developed as Northcutt Plaza, Phase II. At some point in time, Mr. McGowan came to acquire a 50% interest in Coleman Boulevard Associates. It is undisputed Phase I and Phase II represent separately platted parcels of land, maintain separate management accounts and were acquired, owned and developed by different groups of people at different times.

In September, 1987, Coleman Boulevard Associates leased space in Phase II to Baskin-Robbins for operation of an ice cream store. Popocar then brought suit to enjoin McGowan, individually and doing business as Coleman Boulevard Associates, from leasing the space in Phase II to Baskin-Robbins. Popocar relies on a non-competition

clause contained in its lease with Northcutt Associates, maintaining the clause prohibits such action. The clause in question provides the following:

> As a partial consideration for the execution of this lease, both Landlord and Lessee agree that during the term of this lease, neither shall permit any person, firm or corporation connected or affiliated with it whether as partner, shareholder or otherwise to, directly or indirectly engage in any business which is similar to or in competition with Lessee's business on the leased premises of Phase I. Landlord shall not lease to any competitor who is in competition with Lessee's business. For purposes of this paragraph, Lessee's business includes all types of frozen desserts including yogurt, tofu and ice cream.

McGowan maintains the non-competition provision in the lease is limited to the Phase I area of Northcutt Plaza. Popocar, on the other hand, contends the provision encompasses both Phase I and Phase II, arguing that the language "on the leased premises of Phase I" modifies the word "business," thus defining the location of Popocar's business, not limiting the noncompetition agreement to the Phase I area.

Popocar first contends the lease is unambiguous and clearly prohibits McGowan from leasing the space in question to Baskin-Robbins. We disagree. If the phrase "on the leased premises of Phase I" modified the word "business" in the manner Popocar contends, the lease would then require that no person, firm or corporation affiliated with Northcutt Associates could engage in any business similar to or in competition with *the business in which Popocar is engaged on these premises.* This would be an unreasonable conclusion.

First, if the court were to accept the language in question as referring simply to the location of the business, the phrase would serve merely to define the business against which competition is prohibited. Thus, it must be asked what significance such an interpretation would have. Under the terms of the lease, unless it receives the written consent of Northcutt Associates, Popocar is limited to operation of a

frozen yogurt store in the leased space. The non-competition clause itself provides that for purposes of this provision "lessee's business includes all types of frozen desserts including yogurt, tofu and ice cream." Thus, the business against which competition is prohibited is defined elsewhere in the lease and the phrase "on the leased premises of Phase I" would be unnecessary under Popocar's interpretation. Further if the phrase simply denoted the location of Popocar's business against which competition is prohibited, and not the area to which the non-competitive agreement would be confined, any number of people could become affiliated with Northcutt Associates and, under such a reading, would be prohibited from any direct or indirect involvement with a similar operation at *any time or any place*. No limitation would be placed on the restraint.

Common sense and good faith are the leading touchstones of construction of the provisions of a contract and where one construction makes the provisions unusual or extraordinary while another construction, which is equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail. *C.A.N. Enterprises, Inc. v. S. C. Health and Human Services Finance Comm.*, 296 S. C. 373, 373 S. E. (2d) 584, 586 (1988). The purpose of all rules of construction is to ascertain the intention of the parties to the contract. *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439, 442 (1962). The intent and purport of a written contract must be gathered from the contents of the entire agreement and not from any particular clause of provision thereof. *Id.* 127 S. E. (2d) at 442. Under these rules of construction, we find Popocar's interpretation is extraordinary and is not supported by a reading of the contract.

Thus, we turn to whether the construction urged by McGowan is consistent with the language employed and would make the provision reasonable, fair and just. Upon review of the contract, we find that the construction urged by McGowan, i.e., that the provision was meant to limit the prohibition against competition to Phase I, is reasonable and consistent with the terms of the contract.

Alternatively, Popocar contends the lease provision in question is ambiguous and, thus, should be construed against McGowan as the drafter of the contract. A

reading of the non-competition provision discloses there is some problem with the wording and it could have, perhaps, been more artfully drawn. While we find it sufficiently clear to support the construction espoused by McGowan, for purposes of this argument, we will assume the provision is ambiguous. Generally, parol evidence is admissible to show the true meaning of an ambiguous written contract. *Klutts Resort Realty v. Down 'Round Development,* 268 S. C. 80, 232 S. E. (2d) 20, 25 (1977). The record contains an abundance of such evidence showing Northcutt Associates and the original Lessor, Tomark, Inc., intended the competition prohibition in the lease to apply only to Phase I. It further reveals the original lessor was instrumental in adding the non-competition clause to the lease during negotiations between Northcutt Associates and Tomark, Inc.

Because we find the provision prohibiting competition is limited to Phase I of Northcutt Plaza, we need not address the issue raised by Popocar on the alternate ruling of the trial judge. For the foregoing reasons the order below is

Affirmed.

BELL and CURETON, JJ., concur.