Hope T. STALVEY, Plaintiff,

v.

The PURE OIL COMPANY, a Corporation, Defendant.

Civ. A. No. 7728.

United States District Court
E. D. South Carolina,
Florence Division.

Oct. 8, 1964.

---

D. W. Green, Jr., Conway, S. C., for plaintiff.

John B. McCutcheon, Conway, S. C., for defendant.

HEMPHILL, Chief Judge.

Exceptions are urged to the Report of Special Referee Ralph Hoffman, Esq., appointed by United States District Judge J. Robert Martin, Jr., to hear and take the testimony and report thereon his conclusions of fact and law. Action originally commenced in the Court of Common Pleas for Horry County, South Carolina, was removed to the jurisdiction of this Court.

On June 1, 1958, plaintiff and defendant entered into a ten year lease, with option for additional five year term to lessee, of Horry County property therein described:

"Beginning at a point marked by the intersection of the westerly boundary line of U. S. Highway #17 with the southerly boundary of 62nd Avenue North, and running thence N. 45 degrees 00′ W. 100 feet to an iron pin; then S. 45 degrees 00′ W. 100 feet to a corner on the property line of the RVA Club; thence S. 45 degrees 00′ E. 100 feet to the westerly boundary of U. S. Highway #17; thence along a line North 45 degrees 00′ E. 100 feet to the point of beginning, as per plat of Robert L. Bellamy, C. E., dated April 22, 1958, a

copy of which is attached and made a part of this description, together with all appurtenances thereto belonging or in anywise appertaining, and all right, title and interest of Lessor in and to any and all roads, streets, alleys and ways bounding said premises."

The lease has certain provisions of import to this determination. Clause 3 controls the amounts due or to become due as follows:

"Lessee agrees to pay as rent for said premises: The sum of one and one-half cents (1½) per gallon on each gallon of motor fuel delivered to the leased premises by Lessee or any person, firm or corporation holding said leased premises under Lessee, such rental in no event to be less than Three Hundred Dollars ($300.-00) per month. On or before the 20th day of each calendar month, the Lessee shall furnish to Lessor a statement showing the gallonage of motor fuel so delivered to said leased premises during the preceding calendar month and accompany such statement with payment of the gallonage rental due and payable. Lessor shall have the right at any and all reasonable times during the period of six (6) months next following each annual lease period to examine at the place where kept by Lessee, the books and records of Lessee pertaining to the gallonage of gasoline so delivered to the leased premises during such annual period."

Clause 8, about which the issue here revolves provides:

"If, at any time during the term of this lease or any extension hereof, the use of the leased premises as a service station for the sale of petroleum products, automobile accessories and service, shall be prevented, suspended or limited by any zoning statute or ordinance, or any other Municipal or Governmental ac-

tion, law or regulation; or if the use of said premsies for such purposes be affected or impaired by the widening, altering, or improving of any streets fronting or adjoining said premises; x x x x x x x x then in any of such events Lessee may cancel this lease by giving thirty (30) days written notice thereof to Lessor. During temporary closing of streets, for repaving or other purposes, rent shall cease if Lessee closes the service station on said premises, and the term of this lease shall be extended for a period equal to the time said station is so closed." [1]

Introduced into the evidence was a plat (plaintiff's exhibit D), pictures, and other exhibits which so supplement the testimony given from the witnesses as to clearly portray the immediate geography in question.

In accordance with the terms of the lease defendant entered upon the premises and began to operate, or put into use, the leased premises as a service station. The pictures introduced show that one of the signs said "Truck Stop". In June of 1961 U. S. Highway #17 which was on the East of the leased premises was widened considerably, land adjacent to the premises was acquired, and events occurred which culminated in this litigation.

At the time the lease was entered into, an "island", (common term for a raised cement piece on which are located petroleum pumps and other service station equipment) 43 feet long and 3 feet wide was located in such a way that the eastern part of such island was flush with the western property line and the entire island was actually on property of the City of Myrtle Beach, later acquired by the South Carolina Highway Department and used in the widening of U. S. Highway #17 adjacent to the leased premises. As a result of the widening this island had to be removed. After removal, defendant, on November 14, 1961, wrote a

---

1. That portion of Clause 8 that is "x"ed out, was "x"ed out and initialed on the original.

letter to plaintiff stating it was exercising its right to cancel the lease.[2]

"There is no issue as to whether notice of termination was given. The sole issue is * * * whether the defendant-tenant had the right to terminate the lease under the provisions of paragraph 8 thereof and under the facts as revealed by the evidence."[3] The Master ruled in favor of plaintiff, declaring the lease in force and recommending money judgment for plaintiff for rentals sued for plus interest.

■ The terminology of paragraph 8 "use of the leased premises as a service station for the sale of petroleum products, automobile accessories and service" is easily understood in its plain and ordinary meaning. The use of the premises for the sale of petroleum products (whether diesel fuel, gasoline, oil or grease) to motor vehicles (whether motor trucks, passenger cars, or other vehicles) is clearly embraced within the language employed in this section of the Lease Agreement. By the same token, the use of the premises for the servicing of motor vehicles (whether motor trucks, passenger cars, or other vehicles) is likewise clearly embraced within the language employed. The Special Master observed in his Report that the Lease made no mention of the premises use as a truck stop; and Counsel for plaintiff, in his oral argument, apparently urged that because the Lease did not detail its use as a truck stop, it was ambiguous. I do not so view the matter, and in my opinion, the absence of language, particularizing or detailing the uses of the premises, is of no consequence. As I read and construe the provisions of the Lease Agreement, it is apparent that they embrace the use of the premises for the sale of petroleum products to, and the servicing of motor trucks. Whether the station is called a truck stop, or some other type stop or whether it catered principally to motor trucks, or other vehicles—such uses are those of a "service station for the sale of petroleum products and services". And if the use of the premises for the sale of petroleum products to motor trucks, and the servicing of the same is limited, suspended, affected or impaired, then its use as a "service station" is ob-

2. "Mr. D. W. Green, Jr.,
  "Burroughs and Green
  "Attorneys-At-Law
  "P. O. Box 7
  "Conway, South Carolina
    "Re: Pure Oil Company Truck Stop
      "Kings Highway & 61st Street
      "Myrtle Beach, South Carolina
  "Dear Mr. Green:
  "In reply to your letter of October 16, 1961, we respectfully disagree with your opinion that the provisions of Paragraph 8 of the Lease Agreement of June 1, 1958 between Mrs. Stalvey, as lessor, and this company, as lessee, do not give this company the right to terminate the lease when the Highway Department alters and improves the street upon which the leased premises front, in that the improvements the State intends to make not only impair the use of the leased premises as a service station, but for all intents and purposes ends the use of it as a service station. The provisions of Paragraph 8 do not require that any part of the leased premises be taken in order for the lessee to have the right to terminate.
  "We have the right to terminate on any altering of the street from the condition that existed at the time the lease was entered into, which impairs the use of the leased premises as a service station. We have exercised this privilege a number of times where the leased premises were not invaded in making a change in the highway, like changing the grade of the road in front of the premises and leaving the service station either on a bank or in a hole.
  "In view of the foregoing, we have no intention of dealing with the State Highway Department relative to the improvements being made or pointing out where we think the new ramps should be placed, inasmuch as we intend to pull our equipment and terminate the lease under the provisions thereof when these improvements to the street are made to the extent that the use of the premises as a service station are ended or impaired.
  "With highest personal regards, I remain
        "Yours very truly,
        "/s/ A. J. Molitor
        "A. J. Molitor
  "JSB:jg      Division Real Estate Manager"

3. From the Special Master's Report.

viously limited, suspended, affected or impaired.

It is readily apparent that the purpose of the Lease was the operation and maintenance by the Defendant-Lessee of a service station or filling station on the premises. "Use of the leased premises" was nothing more than the transacting by defendant of such business; the selling of products and furnishing of services to motor vehicles.

But there is another reason why the use of the premises principally for the sale of petroleum products to motor trucks and servicing of them is embraced within the provisions of this Lease Agreement. The subject matter of the Lease, the situation of the parties, the intention of the parties, and the purposes had in view at the time the Lease Agreement was made, all point unmistakably to the fact that the principal use of the premises was for the sale of petroleum and services to motor trucks. The following language of the Court in the cases of Bruce v. Blalock, 241 S.C. 155, 127 S.E.2d 439, 442 and Proffitt v. Sitton, S.C., 136 S.E.2d 257, 260 is apposite:

> The purpose of all rules of construction is to ascertain the intention of the parties to the contract. The subject matter of the contract and the purpose of its exception are material to the ascertainment of the intention of the parties and the meaning of the terms they use. In construing the contract the Court will ascertain the intention of the parties, and to that end will, as far as possible, determine the situation of the parties, as well as the purposes had in view at the time the contract was made. All contracts should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results."

Turning now to those provisions of the Lease dealing with the events or contingencies upon the happening of which the Lessee-Defendant might cancel, it appears that paragraph eight sets forth several groups or series of such events or contingencies. It is provided (1) that if the use of the leased premises for the purposes indicated shall be prevented, suspended, or limited by any zoning statute, or ordinance, or any other Municipal or governmental action, law or regulation, the Lessee might cancel; or (2) that if the use of the leased premises, for the purposes indicated, shall be affected or impaired by the widening, altering or improving of any streets fronting or adjoining the premises, the Lessee might cancel.

The Special Master concluded that the acts or events providing for cancellation in paragraph eight must amount to an invasion or appropriation of the leased premises, and this appeared to be the principal basis of his finding that the defendant was not entitled to cancel the Lease. This conclusion on the part of the Special Master is repugnant to the clear language of the paragraph of the Lease in question, and his construction or interpretation thereabout is erroneous. That no "actual" invasion or appropriation of the premises is required by this paragraph of the Lease is implicit in the language employed therein.

With respect to the "widening, altering, or improving" of the streets adjacent to the premises, there is no confinement as to the nature or degree of the "impairment" of use of the premises which permits cancellation. Nor is there anything which says that the "widening, altering or improving" must be on any part of the leased premises. In short, this portion of the Lease simply provides that if the *use* of the premises for the purposes indicated is *affected* or *impaired*, by either the widening or the altering, or improving of the streets, the Lessee may cancel.

As stated in Three States Coal Company v. Mollohon Manufacturing Company, 137 S.C. 345, 351, 135 S.E. 380, 382, "All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results." A

sensible and reasonable construction of this contract, in accordance with the plain and ordinary meaning of the terms, leads inevitably to the conclusion that the acts or events entitling the Lessee-Defendant to cancel did not have to constitute an actual invasion or appropriation of the leased premises. The Special Master erred, therefore, in finding to the contrary.

It should be observed at this point that the Lease Agreement not only demised to the defendant the described lot; but also "all appurtenances thereto belonging, or in anywise appertaining, and all right, title and interest of Lessor in and to any and all roads, streets, alleys and ways bounding said premises." The defendant's use of the premises, therefore, was not confined to the described lot; but included all "appurtenances" or "adjuncts" (such as the pump island which was necessary to its enjoyment), and such easements, rights, privileges or licenses as the Lessor had in the adjoining streets, and the use thereof (such as the privilege of exit and entrance, and parking).

"Appurtenances" or "adjuncts" include everything essential or reasonably necessary to the full beneficial use and enjoyment of the demised premises. Whatever easements or privileges appertain to the demised premises, and are used and enjoyed in connection therewith ordinarily pass with the demise. See 32 Am.Jur., Landlord and Tenant, Sec. 169, et seq.; Vol. 3A Words and Phrases, Appurtenance, page 529 et seq.; Black's Law Dictionary, (3rd Ed.), page 132.

The Special Master apparently placed considerable emphasis upon the fact that the pump island was located outside the described lot or premises, and within the area designated on the map as Highway #17; and that the defendant's customers used a part of the area designated on the map as Highway #17 for parking purposes. Accordingly, the Special Master reasoned, and Counsel for plaintiff argued, that removal of the island and disruption of customer parking did not limit,

affect or impair the use of the leased premises, because these changes took place outside the described lot or premises. The Lease Agreement clearly indicates that the acts or actions or changes affecting the use of the premises need not be confined to the described lot, nor directly operate thereon. The pump island and parking area were obviously used in connection with the described lot (as was the Highway itself for customer entrance and exit) and necessary to the business transacted thereon. Removal of the island and disruption and discontinuance of parking would certainly affect or impair, or limit the use of the lot or premises. It is apparent from the record that the location of the pump island and its use in connection with the leased premises, and the condition of the Highway, were all known to the parties, and within their contemplation at the time the Lease Agreement was entered into. The record also indicates that the pump island and parking area had been used with the license or permission of appropriate Governmental authority. There appears to be little dispute about the fact that until the construction in question on Highway #17, in 1961, the State Highway Department Right-of-Way was only seventy-five (75) feet, and in connection with this construction, the State Highway Department obtained by grant from the City of Myrtle Beach, an additional twenty-five (25) feet. The pump island and parking area were within the additional area granted by the City to the State Highway Department.

Such construction of the provisions of this Lease Agreement is fully supported by the opinions of the Supreme Court of Minnesota, and the Appellate Court of Illinois in the cases of Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 13 N.W.2d 757, and Crosby v. Baron-Huot Oil Co., 324 Ill.App. 651, 59 N.E.2d 520, in both of which cases, the provisions of the Lease Agreements providing for cancellation were nearly identical with those now before this Court. Search of the authorities in our immediate and neighboring jurisdictions has not revealed decisions

dealing with the precise matter now before the Court.

■ This brings us now to the factual findings of the Special Master. Has the use of the premises as a service station for the sale of petroleum products, automobile accessories, and service (as construed above) been limited, affected or impaired? The Court is of the opinion that the record requires an affirmative answer.

The witnesses for the defendant explained in detail the basis for the impairment, and the reasons the premises could not continue to be used profitably, or satisfactorily for motor trucks, and explained how the transaction of business was affected. This was not contradicted by the plaintiff. Moreover, the defendant offered credible testimony that it made numerous efforts after the changes in Highway #17 to devise some feasible plan whereby the premises could continue to be profitably and successfully operated, even to the extent of exploring the possibilities of moving the masonry building located on the lot. The estimate of $12,-000.00 for such moving rendered that unfeasible. The last operator of the station, Mr. John Graham, testified that he knew of no way the station could accommodate the same number of trucks after the Highway was widened.

The fact that the premises could still be used for the servicing of passenger automobiles, as observed by the Special Master, is not controlling. In fact, this constituted only a small portion of the use of the premises, and the business transacted thereon.

The Court concludes that the Special Master committed error in his findings of fact, and in his conclusion of law. The defendant was entitled to cancel the Lease, and to surrender the premises. It is, therefore,

Ordered, that the Report of the Special Master in the above entitled cause be and the same is hereby vacated and set aside, and that the Complaint be and the same is hereby dismissed.

And it is so ordered.

